2002 ME 119

**Justin NEWBURY**

v.

**Howard VIRGIN.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 30, 2002.

Decided: July 30, 2002.

**414** ■

Walter F. McKee, Lipman & Katz, Augusta, for the plaintiff.

Howard Virgin, pro se, New Smyrna Beach, FL, defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Justin Newbury appeals from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) against Howard Virgin for illegal eviction and conversion of personal property. Pursuant to M.R. Civ. P. 50(b) the court, concluding that the evidence was insufficient as a matter of law, vacated that part of the jury verdict awarding Newbury consequential damages for lost profits and punitive damages. Following the court's action, the judgment in favor of Newbury was limited to compensatory damages for conversion, and damages and attorney fees for the illegal eviction. Newbury contends that the court erred because the evidence, viewed in a light most favorable to him, was sufficient to support a jury finding· that Newbury was entitled to recover damages for lost profits, and a finding that Virgin acted with malice, entitling Newbury to punitive damages. We vacate the court's judgment.

[¶ 2] The evidence, viewed in a light most favorable to Newbury, establishes the following facts: During and following college, Newbury worked at over a dozen nightclubs in a variety of capacities. He developed familiarity with inventory, cash flow, and the financial aspects of clubs and bars. He also ran a successful disk jockey business while living in Maine.

[¶ 3] After saving his money for more than two years, Newbury decided to open a chemical-free dance club in Augusta, which he eventually named "Club Xtremis." Using an employee manual and business plan he obtained from his previous work in the nightclub industry, and relying on his own knowledge and experience, he created a business plan for Club Xtremis. Newbury agreed to rent space for the nightclub from Virgin at a property located at 333–339 Water Street for $93 per week, with the first six weeks of rent being waived because Newbury had to clean-up and repair the leased premises.

[¶ 4] Virgin is an experienced landlord who has owned as many as forty residential and commercial rental properties at one time. He has a law degree, has worked in the real estate business for over fifty years, is knowledgeable about landlord-tenant relationships, and is familiar with leases, including lease agreements similar to his agreement with Newbury. Virgin is familiar with the forcible entry and detainer procedures for evicting tenants.

[¶ 5] During the initial six weeks of the lease, Newbury, along with family, friends, and volunteers, worked long hours cleaning and repairing the property, and preparing it for the chemical-free dance club. Newbury leased personal property and equipment for the club, such as chairs, tables, dishes, sinks, and a security system. He also obtained the required licenses and certificates for opening a dance club.

[¶ 6] Club Xtremis opened for business on October 15, 1998. The club was an immediate success, drawing 120 patrons on the first evening, a Friday, and 150 people on the following evening. The club sustained its success over the next couple of weekends, hosting even larger crowds. In its first three weekends, Club Xtremis generated gross revenues totaling more than $4600. The revenue generated within the first three weeks of business allowed Newbury to recover all the costs he incurred in creating and starting the business. Newbury testified that he would have been able to sustain the revenues he received during the first three weeks of business indefinitely, revenues that essentially amounted to a net profit of $350 per week.

[¶ 7] On Saturday, October 31, 1998, Newbury tendered a check to Virgin for the upcoming week's rent and the prior month's electric bill. The next morning, Newbury went back to Club Xtremis to clean-up. When he arrived at the club, Newbury found a note on the door written by Virgin, stating that the locks were changed and that Newbury would have to contact Virgin at his Florida residence in order to get into the building. The note listed Virgin's telephone number in Florida. Virgin had left for Florida immediately after changing the locks on the club. Virgin had long standing plans to leave for Florida on that Sunday, but never gave Newbury any prior notice that he was going to lock Newbury out.

[¶ 8] Newbury reached Virgin by telephone in Florida that day. Virgin refused to discuss the matter and hung up on him. Only after Newbury's mother called and pleaded with Virgin to let her son retrieve his personal items, such as his insulin to treat his diabetes, did Virgin send a key to

Justin Roy, a tenant of Virgin who managed Virgin's property. It was not until November 5 that Newbury was able to get back into the club, and even then, Newbury was allowed to retrieve only his personal financial records, money that was in the cash box, personal tools and disk jockey items, and his insulin. Roy, at Virgin's direction, refused to allow Newbury to retrieve any of his business equipment at that time. Newbury was unable to regain possession of his business equipment until the third week of November. Virgin returned the week's rent paid by Newbury via postal mail sometime during the first week of November.

[¶ 9] Prior to Club Xtremis's opening, Roy and Virgin had discussed the possibility of Roy running his own dance club where Club Xtremis was located. Virgin had even purchased an insurable interest in Roy's disk jockey equipment to help Roy with his plans. Virgin testified that he had become "pretty well upset" with Newbury because Newbury was not operating the club in the manner Virgin wanted. After Newbury was locked out, Roy obtained a dance license for a club at the same location as Club Xtremis.

[¶ 10] In December of 1998, in an attempt to sustain the momentum generated by Club Xtremis, Newbury opened another club called Club Fusion located at 349 Water Street. Newbury could not open Club Fusion earlier because of the delay he incurred in reacquiring his business equipment. Club Fusion did not generate the business generated at Club Xtremis before the lock out, and Club Fusion was eventually shut down.

[¶ 11] Newbury brought suit against Virgin for illegal eviction and for conversion of Newbury's property during the course of the illegal eviction. Virgin acted *pro se* at the trial. Following the close of the evidence, pursuant to M.R. Civ. P. 50(a),

the trial court granted Newbury's request for a directed verdict on Virgin's liability for the illegal eviction. The trial court also stated that although it was going to let the jury consider lost profits and punitive damages claimed by Newbury, it intended to vacate any such awards and direct verdicts in favor of Virgin.

[¶ 12] With a special verdict form, the jury returned a verdict for Newbury awarding $4575 as damages on the illegal eviction, $3500 for conversion of the property, $52,000 for subsequent lost profits and earnings from the temporary loss of use of Newbury's property, and $25,000 in punitive damages. Following the jury's verdict, without any request from Virgin, and based on what it considered to be insufficient evidence, pursuant to M.R. Civ. P. 50(b) the trial court vacated the damages awarded by the jury for lost profits, and also vacated the award for punitive damages. The court then entered a judgment on the verdict, awarding Newbury $8075 in damages for the eviction and conversion, and $16,542 in attorney fees and $1603.24 in court costs on his illegal eviction claim. *See* 14 M.R.S.A. § 6014(2)(B) (Supp.2001) (attorney fees may be awarded to tenant illegally evicted).

[¶ 13] Newbury appealed. Virgin filed no notice of appeal.

■ [¶ 14] Newbury's contention is that the evidence was sufficient to support the jury awards of lost profits and punitive damages. Virgin, acting *pro se*, has not responded to any of Newbury's contentions in his appellee brief. Rather, despite neglecting to file any notice of appeal, he argues that we should vacate the entire judgment in favor of Newbury because the Superior Court violated his rights to due process and his rights under the American with Disabilities Act by failing to accommodate his hearing disability. Because

Virgin never raised in the trial court the issue he now raises for the first time on appeal, he failed to properly preserve his contention and accordingly, we will not consider it. *See McAfee v. Cole,* 637 A.2d 463, 466–67 (Me.1994) (unless it is obvious error an issue raised for the first time on appeal is deemed unpreserved and will not be considered on appeal).

## I. LOST PROFITS

[¶ 15] In reviewing a trial court's grant of a Rule 50(b) motion for a judgment as a matter of law, we examine "the jury verdict to 'determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury's verdict.'" *Maine Energy Recovery Co. v. United Steel Structures, Inc.,* 1999 ME 31, ¶ 6, 724 A.2d 1248, 1250 (quoting *Townsend v. Chute Chem. Co.,* 1997 ME 46, ¶ 8, 691 A.2d 199, 202).

[¶ 16] In a conversion claim, the traditional measure of damages is the full value of the property at the time of the unlawful conversion. *Doughty v. Sullivan,* 661 A.2d 1112, 1122 (Me.1995). "In certain cases, however, consequential damages, including lost earnings, may be warranted when the plaintiff can show that the damages were proximately caused by the defendant's acts and the amount of damages can be shown with reasonable certainty." *Id.*

[¶ 17] Newbury presented uncontroverted evidence that he had extensive experience, acquired over the past decade, working in and dealing with the financial aspects of nightclubs. Virgin made no objection to Newbury's testimony about his specialized knowledge of club finances, successes, and profits. Newbury's testimony on his work related experience and knowledge, along with his intimate famil-iarity with Club Xtremis as its owner, was sufficient to qualify him to testify to the amount of profits he lost from the conversion of his business equipment by Virgin.

[¶ 18] Claims for lost earnings or profits for conversion, however, generally are limited to the period it would take a reasonable person to replace the converted property. *Id.* at 1122–23. Newbury testified that Club Xtremis would have netted a profit of at least $350 per week. This testimony was sufficient to establish that Newbury was entitled to $1050 in lost profits for the three-week period during which his business equipment was held by Virgin.

[¶ 19] The jury awarded lost profits of $52,000; this amount approximates a claim for lost profits for a period of nearly three years. Newbury contends that the evidence was sufficient to support the $52,000 amount because his testimony established that as a result of not being able to have his business equipment during the first three weeks of November of 1998 he was unable to take advantage of the good will generated at Club Xtremis and transfer that good will to Club Fusion. According to Newbury, Club Fusion's profit-generating potential could have lasted into perpetuity, had it captured Club Xtremis's "momentum." We disagree.

[¶ 20] Although Virgin has offered no argument on the issue of lost profits, an award of damages must be supported by credible evidence. Newbury offered no corroborating evidence establishing that Club Xtremis's profits would be sustainable throughout the year or for any extended period of time, let alone indefinitely. There was no credible evidence demonstrating that Newbury's efforts to mitigate his damages were completely frustrated by the fact that he could not capitalize on the "momentum" created by Club Xtremis. The evidence is insufficient to justify the

extent of the period for which the award was given or the reasonableness of the amount of the award. *See Eckenrode v. Heritage Mgmt. Corp.*, 480 A.2d 759, 766 (Me.1984) ("Plaintiff's own opinion as to the increased profits he would have reaped had he operated the shop for the entire period of his contract, based merely on one year's past performance of the shop and on changes that would result under the contract as to plaintiff's expenses and profit retention, was not an informed opinion based on relevant facts in evidence upon which the jury could rely in assessing damages for claimed lost profits."). On the state of the evidence in this case, we see no reason to depart from the principle espoused in *Doughty,* 661 A.2d at 1122–23, that damages for lost earnings and profits for conversion are usually limited to the time period it would take a reasonable person to replace the converted items. We conclude that Newbury's claim for lost profits should be limited to a period of three weeks, or $1050.

## II.  PUNITIVE DAMAGES

[¶ 21] "[I]n order to recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant acted with malice." *Tuttle v. Raymond,* 494 A.2d 1353, 1354 (Me.1985). Malice can be express or implied. *Id.* at 1361. Express malice exists "where the defendant's tortious conduct is motivated by ill will toward the plaintiff." *Id.* Malice also exists "where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied." *Id.* Implied malice is not established "by the defendant's mere reckless disregard of the circumstances." *Id.*

[¶ 22] The evidence was sufficient for a jury to conclude that Virgin planned to drive Newbury out of business so that Roy and Virgin could start-up a similar business in the same location. Virgin admitted that he did not like the way Newbury conducted himself and did not like the fact that, in his eyes, Club Xtremis was not shaping up the way Virgin thought it should. It is reasonable to infer that Virgin knew that by locking Newbury out of the rented premises, and prohibiting Newbury access to his business equipment, Club Xtremis would fail. Virgin's agreement with Roy, the egregious illegal lockout of the rented premises, and the subsequent wrongful retention of Newbury's business equipment, along with evidence of Virgin's personal animosity towards Newbury and Newbury's business practices, are sufficient to support a finding by clear and convincing evidence that Virgin acted with actual malice or that Virgin's conduct was so outrageous that malice could be implied.

The entry is:

Judgment vacated in part. Remanded to the Superior Court for a modification of the judgment to reflect a reinstatement of an award for lost profits in the amount of $1050 and of the jury's award for punitive damages in the amount of $25,000. Judgment affirmed in all other respects.