STATE OF MAINE
LINCOLN, ss

LINCOLN COUNTY RECEIVED AND FILED SUPERIOR COURT
MAR 11 2003
SHARON SIMPSON CLERK

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-01-005
TDW - LIN - 3/11 2003

MAINE FARMS VENISON, INC.,

    Plaintiff

v.

PEERLESS INSURANCE CO.,

    Defendant

ORDER ON DEFENDANT'S
POST-TRIAL MOTIONS

DONALD L. GARBRECHT
LAW LIBRARY

MAR 14 2003

In the aftermath of a trial that yielded a jury verdict of $255,000 in favor of plaintiff Maine Farms Venison, Inc. (MFV), defendant Peerless Insurance Co. has moved for judgment as a matter of law pursuant to Rule 50(b), for a new trial pursuant to Rule 59(a), and for a mistrial and new trial without specifying a rule.[1]

On issues relating to liability, the motions largely reiterate arguments that were made by Peerless before and during trial and on those issues, the court has reconsidered the arguments made by Peerless and will not disturb either the rulings it previously made or the jury's verdict.

The issue of damages, however, is not in the same category. There was a sufficient basis for the jury's verdict that the number of deer killed by lighting totaled 154.[2] Under its policy, Peerless was obligated to pay $250 per deer, regardless of age or

---

[1] The court is unaware of any rule allowing a party after verdict to move for a mistrial. As far as the court is aware, Peerless's only avenues of relief are under Rules 50 and 59.

[2] The number of 154 represented an appropriate calculation for the approximate number killed, given that MFV offered a number of different figures, admitted that no exact count had been made, and argued that it had been misled by Peerless into not including newborn fawns in some of its earlier estimates.

gender, and therefore it should have paid MFV $38,500 under the policy. MFV, however, was not limited to a claim for $38,500 in damages but was permitted to submit to the jury a claim for consequential damages – damages designed to place MFV in the position it would have occupied if Peerless had paid the $38,500 MFV was owed. The jury's verdict of $255,000 in damages therefore represented its determination of the consequential damages owed to MFV.

Particularly where lost profits are considered, an award of damages must be supported by credible evidence. See Newbury v. Virgin, 2002 ME 119 ¶20, 802 A.2d 413, 417. Accord, Tang of the Sea Inc. v. Bayley's Quality Seafoods, Inc., 1998 ME 264 ¶8, 721 A.2d 648, 650 (to be recoverable, damages must not be uncertain or speculative but must be grounded on facts in evidence). As the Law Court observed in Rutland v. Mullen, 2002 ME 98 ¶22, 798 A.2d 1104, 1112, prospective profits are allowable only if they can be estimated with recoverable certainty. Although opinion evidence regarding cost profits is admissible, it must be an informed opinion based on facts that the fact finder can evaluate. Id.

The problem in this case is that the jury's award of $255,000 is either unsupported by or contrary to the facts in evidence. This is true even if all issues that could be reasonably based on the evidence are decided in favor of MFV.

Given, as noted above, that the number of deer lost to lightning was 154 and that Peerless should therefore have paid MFV $38,500 under the policy, that amount cannot be found to have been owed prior to November 1999.[3] Moreover, Maxmin

---

[3] This is true for at least three reasons. First, Peerless had a legal right to investigate the claim. Indeed, under the applicable statute Peerless had 30 days after the filing of a Proof of Loss to pay the claim. See 24-A M.R.S.A. §2436 (1). In this case, MFV's Proof of Loss was dated November 1, 1999 and Peerless issued its denial letter on November 4, 1999. Second, although Maxmin made an attempt at trial to argue that Peerless should have paid the claim in September, no claim for delaying payment

acknowledged in his trial testimony that it was too late in the year to successfully breed any deer purchased in November 1999 and that he also could not have purchased pregnant females at that time. See Maxmin trial testimony 171.

Maine Farms Venison would have had two choices if it had received $38,500 in insurance proceeds in November 1999. The first would have been to purchase non-pregnant females at that time. If MFV had done that, however, it would have missed the 1999 breeding season entirely. Non-pregnant females purchased in late 1999 could not have been bred until the fall of 2000 and would not have given birth until the summer of 2001.

MFV's other alternative would have been to attempt to purchase pregnant females in 2000, and Maxmin testified that MFV would have followed this course of action. He acknowledged in his testimony, however, that even if that had been done, the pregnant females would not have given birth to fawns until 2001 and no bucks would have been available for slaughter until the end of 2002. Maxmin trial testimony 183-84. In any event, therefore, MFV, through no fault of Peerless, would have missed the 1999 breeding season and would not have had any new fawns in the summer of 2000.

Maxmin testified that the cost of purchasing pregnant females would have been $300 each. Accordingly, the maximum number of deer MFV could have purchased with $38,500 in insurance proceeds would have been 128.

---

was made in the complaint and any conceivable claim by MFV that Peerless had failed to acknowledge and review MFV's claim within a reasonable time, see 24-A M.R.S.A. § 2436-A(1)(B), was dismissed a t the time of summary judgment. Finally, on the issue of damages, the jury was instructed that if MFV prevailed on liability, it would be entitled to damages "equalling an amount sufficient to place it in the same economic position it would have occupied if Peerless had paid to Maine Farms Venison in November 1999 an amount equalling $250 for each deer killed by lightning". MFV did not object to this instruction at trial.

Deer mate in the fall and pregnant females produce one fawn each the following summer. Maxmin testified that after the lightning incident, breed bucks would still have been available to MFV. The jury also appears to have credited his testimony that after the females in MFV's herd were bred, MFV could have expected 95% of the females to produce fawns that survived. The 5% loss is attributable to females that do not become pregnant and to mortality among fawns.

Thus, either by purchasing 128 non-pregnant females and breeding them to the existing bucks available to MFV in the fall of 2000 or by purchasing 128 pregnant females in 2000, Maine Farms Venison could have been projected to have had no more than 250 deer by the summer of 2001. This 250 would have consisted of the 128 females purchased with the insurance proceeds and 122 surviving fawns born to those females in the summer of 2001 (61 newborn males and 61 newborn females). The evidence established that the newborn males were too young to slaughter at that time and the newborn females were too young to breed, but the 128 adult females could have been bred again in the fall of 2001.

By the summer of 2002, therefore, Maine Farms Venison could have been projected to have the following herd derived from the $38,500 in insurance proceeds that Peerless should have paid in late 1999:

- 128 females purchased in 1999 or 2000

- 61 yearling females born in 2001

- 61 yearling bucks born in 2001 and available for slaughter at the end of 2002

- 61 newborn female fawns born in the summer of 2002

- 61 newborn male fawns born in the summer of 2002.

4

If it is assumed that the original 128 females and the 61 yearling females had a value of $300 each, as Maxmin testified, and it is further assumed that the same value should be attached to the 122 new fawns (both male and female) born just before trial,[4] the projected value of MFV's herd as of the time of trial would have been $93,300 (311 animals x $300 each).

To this figure can be added the projected amount that might have been realized in late 2002 from slaughtering the 61 bucks born in 2001. Assuming that MFV could have realized $10 per pound at a hanging weight of 60 pounds each, as Maxmin testified, the revenue that would have been realized would have been $36,600. From this amount must be subtracted the cost of feeding and slaughtering the bucks, which Maxmin's calculations indicated would have come to approximately $11,155,[5] yielding net revenue of $25,450.

Adding $93,300 and $25,450 yields a total of $118,750 – far below the $255,000 damage figure reached by the jury. In making the above calculations, moreover, the court has given MFV the benefit of the doubt on such issues as whether MFV would have been profitable (notwithstanding the tax losses experienced at Lakefield Farms, Maxmin's other deer farming venture), whether the herd would have reproduced at the rate that MFV claimed, whether MFV could in fact have marketed its deer for $10 per pound at an average yield per deer of 60 pounds, and whether MFV had originally

---

[4] MFV never offered any separate estimate as to the value of a newborn fawn but it may be inferred from Maxmin's testimony that he attached a value of $300 to all animals except those immediately slated for slaughter.

[5] Maxmin calculated that the expense of feeding a buck from birth to slaughter was $122.85 per buck ($7493.85 for 61 bucks) and that the butchering cost per buck would have been $60 each ($3660 for 61 bucks).

only claimed 84 deer because it was misled by Peerless in thinking newborns were not covered.

Indeed, the $118,750 figure arrived at above is obviously too high in at least one respect: it does not deduct any amount for the expenses that would have been incurred by MFV in building up and maintaining its herd.[6]

Given the calculations above, the jury's award of $255,000 in damages cannot be justified and can only have been based on speculation. To the extent that the damages awarded were based on the $308,000 damage figure requested by Maxmin in his testimony at trial, the court concludes that the $308,000 figure was without factual foundation. First, Maxmin's $308,000 figure was purportedly based on a herd of 453 females and the slaughtering of 122 bucks. Maxmin trial testimony 114-15, 117-18. As noted above, those figures cannot be reconciled with the evidence. Even using Maxmin's numbers, however, his figures do not add up to $308,000. If the projected herd contained 453 females valued at $300 each, that results in a total herd value of $135,900. Moreover, if 122 bucks were also slaughtered yielding revenue of $600 each, that would yield additional revenue of $73,200. Even before deducting the costs of feeding and butchering with respect to the bucks sold for meat, the total of those two figures comes to $209,100, not $308,000. Even $209,100 is well below the jury verdict in this case.

One of the fallacies in MFV's approach is that many of its damage calculations have been premised on the theory that it is entitled to damages equaling an amount

---

[6] Although Maxmin testified that the projected value of MFV's herd should not be reduced by feed and maintenance costs, which he likened to utility bills that do not affect the value of a residence, it cannot be disputed that MFV did not incur costs and expenses it would otherwise have incurred if it had had an actual (as opposed to a projected) herd. The court can see no justification for not netting out those

sufficient to place it in the position it would have occupied if no deer had been struck by lightning at all. This is not a defensible approach. Peerless is not responsible for the lightning that the jury found killed 154 deer. Peerless is only responsible for not paying $38,500 to MFV in November 1999. MFV's damage calculations took no account of the fact that the deer were underinsured, the fact the Peerless was not required to pay the claim until a formal claim had been presented specifying at a minimum the number of deer involved, and the fact that Peerless was not obligated to pay the claim until it had had a reasonable opportunity to investigate the incident.

Even in its argument on the post trial motions presently before the court, MFV bases its calculations on 154 deer (not the lesser amount it could have purchased with $38,500) and does not fully account for the fact that Maxmin conceded that MFV would necessarily have missed the entire 1999 breeding season. See Plaintiff's Memorandum of Law dated October 15, 2002 at 13.

Notably, it became evident during the voir dire of Maxmin that his original calculations were based on the value of the herd that would have existed if no lightning strike had occurred rather than the value as it would have existed if Peerless had paid the claim in November 1999. Thereafter, although Maxmin's trial testimony was purportedly adjusted to reflect the correct measure of damages, see Maxmin trial testimony 110, he ended up with exactly the same $308,000 figure he had calculated when he was basing damages on the lightning strike rather than on the failure to pay. Compare Maxmin trial testimony 118 with Defendant's Ex. 75 introduced during Maxmin voir dire. The court was surprised by this at the time but elected to allow

---

costs. Maxmin also testified that MFV would have incurred debt if its herd had continued to grow (Maxmin trial transcript 110) but he made no allowance for debt service in his calculations.

MFV's damage case to proceed and assumed that the weaknesses in its damage calculations would be adequately exposed by the adversary process. This was error.

In addition, the court has since performed the calculations discussed above, which further demonstrate that the $255,000 verdict cannot stand. Upon review of the entire record, the court has now concluded that – notwithstanding Maxmin's qualifications to offer financial opinions – his estimate of consequential damages was speculative, was not based on relevant facts in evidence, and was not testimony on which a jury could properly rely. See Eckenrode v. Heritage Management Corp., 480 A.2d 759, 766 (Me. 1984).[7]

The remaining question is what relief should be awarded. Peerless argues that the entire consequential damage award should be rejected because it was based on overly speculative testimony. To grant Peerless judgment as a matter of law with respect to consequential damages would leave MFV with damages of $38,500 – the undisputed amount payable upon the death by lightning of 154 deer. There is authority for this proposition. See Newbury v. Virgin, 2002 ME 119 ¶20, 802 A.2d at 417-18 (damages reduced to the amount that was proven with competent evidence).

Alternatively, however, it can be argued that the court should honor the jury's verdict up to the maximum permissible amount that can be supported by the evidence. See Nyzio v. Vaillancourt, 382 A.2d 856, 861 (Me. 1978). The foregoing discussion demonstrates that it is possible to calculate a consequential damage figure in this case that is not inconsistent with the evidence and that is consistent with the jury's evident conclusion that MFV would have been able to operate successfully if Peerless had paid

---

[7] The court is not aware of any theory by which the jury could have reached its $255,000 figure other than by taking Maxmim's $308,000 figure and discounting it to account for the jury's reduction in the number of deer killed.

8

MFV's claim in November 1999. The court concludes that this is the appropriate course to follow in this case.

Rule 59(a) provides that a new trial shall not be granted on the ground that the damages awarded are excessive unless the prevailing party has first been given an opportunity to remit the portion of the damages found to be excessive. Based on the analysis set forth above, the court orders a new trial unless Maine Farms Venison remits any award of damages in excess of $107,220.[8] In reaching this result, the court has excluded the speculative and factually unfounded aspects of Maxmin's testimony but has not disregarded those aspects of Maxmin's testimony upon which, although disputed, the jury could properly have relied – principally that a $300 value could be placed on each deer, that the herd would have grown by 95% with each new set of fawns, and bucks ready for slaughter could be expected to fetch $10 per pound with an average hanging weight of 60 pounds. Since the jury appears to have disregarded Peerless's arguments that the above scenario was unrealistically favorable and that MFV failed to mitigate its damages, the court has also disregarded those arguments in calculating the figure above.

---

[8]This figure was arrived at by adding the two figures discussed above ($93,300, representing the maximum projected value of the herd as of the time of trial, and $25,450 representing the estimated net revenue that would be derived from slaughtering 61 bucks in the fall of 2002) and subtracting the estimated cost that MFV would have incurred in feeding the remaining deer in the herd. This latter figure can be derived from the record, using Maxmin's estimate of $.27 per animal per day (Maxmin trial testimony 25). Thus by the time of trial MFV would have had to feed the 128 deer purchased with insurance proceeds in 2000 for 2 years (128 deer x $.27 per day x 365 days x 2 years) and would have had to feed the 61 females born in 2001 for one year (61 deer x $.27 per day x 365 days). The cost of feeding the 61 bucks to be slaughtered in late 2002 has already been deducted in arriving at the net revenue from those bucks, and the court assumes that there would have been little or no cost as of the date of trial in feeding the fawns newly born in 2002. The calculations above yield a total feeding expense of $31,240 but that figure should be adjusted to give MFV a credit of $ 19,710 for its prior purchase of sufficient feed for 200 deer for 1 year (.27 x 365 x 200). The court has therefore subtracted $11,530 to account for the costs MFV would have incurred in feeding its projected herd.

Any new trial will be limited solely to the issue of damages. See Eckenrode, 480 A.2d at 766 (ordering new trial "on the issue of damages only"). The parties will not be permitted to retry the issue of liability — whether the deer were filled by lightning or whether Peerless breached its implied contractual obligation of good faith and fair dealing in permitting MFV to bury the deer without an autopsy. That 154 deer were killed by lightning is also established by the jury's verdict.

The issue at any new trial will thus be limited to the question of what consequential damages should be awarded over and above the $38,500 that can be calculated by multiplying $250 by the 154 dead deer, and evidence will be strictly limited to the financial issues surrounding MFV's prospects if Peerless had paid $38,500 in late November 1999. No further discovery shall be permitted absent leave of court. Absent leave of court, the parties shall also be limited to the theories and evidence they previously have presented or that were previously disclosed as part of the discovery and pretrial proceedings in this case. To the extent that the court has concluded above that certain of the damages evidence presented by MFV was unfounded or overly speculative, it will exclude such evidence on retrial.

The Nyzio case and Peerless's motion raise one other issue – whether the jury's verdict was the product of passion or prejudice necessitating that the verdict as a whole, not just the verdict as to damages, be set aside. The court does not conclude that the verdict in this case was influenced by passion and prejudice. Although several members of the jury panel expressed a prejudice against insurance companies during the voir dire, none of those members ended up on the jury. Looking at the jury selection as a whole, the remaining jurors from whom the panel in this case was

10

selected were those who had indicated they did not have any predisposition against insurance companies.

The court also notes that while counsel for MFV did make various arguments as to Peerless's good faith, those arguments were appropriate given that the trial involved a claim for breach of the implied obligation of good faith and fair dealing. While no trial is perfect and this trial certainly was not, the court does not conclude that the verdict here was a product of passion or prejudice. Because the evidence of record cannot be squared with the $255,000 amount awarded by the jury and because Peerless preserved its objection to MFV's evidence as to damages, a new trial as to damages must be granted as noted above. Nevertheless, the court finds no basis to conclude that the verdict resulted from passion or prejudice.

The entry shall be:

Defendant's motion for a new trial is granted solely on the issue of damages unless plaintiff remits any amount of damages in excess of $107,220. In all other respects, the defendant's motion for a new trial is denied.

If Maine Farms Venison Inc. accepts the remittitur of damages in excess of $107,220, judgment shall be entered for Maine Farms Venison Inc. in that amount. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March 5, 2003

_____
Thomas D. Warren
Justice, Superior Court

Pltff:  Thomas J. Connolly, Esq.   (773-6460)
Def:    Thomas Jarjerison, Esq.    (774-7000)