STATE OF MAINE
CUMBERLAND, ss

CLERK'S OFFICE

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-07-149

200 MAR -7 P 2: 42   REC—CUM - 3/7/2008

REBECCA BIGGS,
    Plaintiff

v.

DAVID FILIPOS,

DONALD L. GARBRECHT
LAW LIBRARY

    Defendant

APR 02 2008

ORDER ON PARTIES'
MOTIONS FOR
SUMMARY JUDGMENT

Before the Court is Plaintiff Rebecca Biggs's Motion for Summary Judgment on all but one count of her Complaint and on both of Defendant David Filipos' counterclaims. Defendant Filipos likewise seeks judgment in his favor on his counterclaims.

## BACKGROUND

Plaintiff Rebecca Biggs ("Biggs") and her friend Crystal Bonner ("Bonner") rented a residential apartment in Portland, Maine from Defendant David Filipos ("Filipos") pursuant to an executed lease that ran from April 1, 2006 through September 30, 2006. Pursuant to the terms of the lease, Biggs and Bonner were to pay rent monthly, due on the first day of the month. Also pursuant to the lease, Filipos was authorized to enter the apartment only after obtaining consent at least 24 hours in advance. The lease also required Filipos to give notice in writing if he was going to terminate the lease and set forth guidelines Filipos was to follow if he was going to evict the tenants from the apartment. The lease further stated that Filipos had to dispose of abandoned property in compliance with Maine abandoned property statutes. The lease

obligated Biggs and Bonner to return the apartment in the same condition it was in at the start of the lease.

It is undisputed that in late August or early September 2006, Bonner approached Filipos about moving out early. The parties disagree as to whether Bonner told Filipos that both she and Biggs were moving out (Filipos's position) or whether Bonner stated that only she was leaving early (Biggs's position). There is no dispute that there was no conversation between Biggs and Filipos about Biggs moving out early, although Filipos states that he believed Biggs authorized Bonner to speak for her.

The parties disagree about whether during this meeting Filipos agreed that Bonner and Biggs could not pay rent for September and Filipos would instead apply the security deposit to cover rent. Bonner argues that Filipos agreed to use the security deposit; Filipos states that he did not agree to this arrangement, but stated that he would have to use the security deposit if Biggs and Bonner did not pay rent. The parties also disagree about whether Bonner told Filipos he could inspect the apartment on September 5, 2006 as Filipos alleges. Bonner maintains that she told Filipos the apartment would be ready for inspection at the end of September after Biggs moved out.

No inspection was held on September 5, 2006. Instead, Filipos alleges that on September 6, 2006, he found the door to Biggs and Bonner's apartment open. Inside, Filipos found the apartment in a "state of sloth, disarray and evident abandonment." Affidavit of David Filipos ¶ 19. Filipos found a set of keys to the apartment on the counter, some furniture, some electronic goods (including a television and digital camera), cosmetics and clothing in the apartment in addition to other items he generally described as "junk." Filipos states that the

2

nature of these items as abandoned was "obvious" and that he believed the items were of no value to Biggs because they were obviously abandoned. According to Filipos, on September 6, 2006, he believed that Biggs and Bonner had left without cleaning the apartment and without paying rent for September because the two had had a yard sale only days before and because he had seen them loading various items into a truck and a van.

On September 6, 2006, Filipos cleared the items out of the apartment and brought them to the Riverside Recycling Center. He also permitted another tenant in the building to enter the apartment and remove a guitar and a digital camera. Filipos claims that he spent several days thereafter cleaning and repairing the apartment.

Biggs returned to the apartment at approximately 2:30 AM on September 7, 2006. The parties disagree as to whether Filipos changed the locks such that Biggs had to crawl in through a window to access the apartment (Biggs's position) or whether the apartment was unlocked (Filipos's position). Upon seeing the apartment empty, Biggs called her mother, Melissa Shattuck ("Shattuck"). Biggs and Shattuck then confronted Filipos, who admitted removing the items from the apartment. Biggs and Shattuck called the police and filed a police report. They also went to the Riverside Recycling Center, but were unable to locate most of the items that Filipos had brought. Biggs was able to recover the guitar and digital camera that Filipos had permitted another tenant to remove from the apartment.

There is no dispute that Filipos did not contact either Biggs or Bonner prior to removing the items, although Filipos states that this was because Biggs

3

and Bonner told him that neither had a mobile phone so he had no way to contact them.

On March 19, 2007, Biggs filed a Complaint with this Court alleging four counts: common law unlawful eviction, statutory unlawful eviction, theft and punitive damages. Filipos has asserted two breach of contract counterclaims against Biggs for failure to pay rent and failure to return the apartment to its original condition. Biggs now moves for summary judgment on all but her punitive damages count and both of Filipos's counterclaims. Filipos likewise seeks judgment in his favor on both of his counterclaims.

## STANDARD OF REVIEW

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15, 917 A.2d 123, 126. "A court may properly enter judgment in a case when the parties are not in dispute over the [material] facts, but differ only as to the legal conclusion to be drawn from these facts." *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994). A genuine issue of material fact exists "when the evidence requires a fact-finder to choose between competing versions of the truth." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93 ¶ 9, 878 A.2d 504, 507. An issue of fact is material if it "could potentially affect the outcome of the suit." *Id.* An issue is genuine if "there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If ambiguities exist, they must be resolved in favor of the non-moving party. *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

4

DISCUSSION

I.    Biggs' Claims

      A.    Unlawful Eviction

Biggs asserts that she was unlawfully evicted by Filipos both under the common law and statutory law. Title 14, section 6014 of the Maine Revised Statutes governs and defines illegal evictions in the State of Maine and states in relevant part:

> 1.    ILLEGAL EVICTIONS. Except as permitted by Title 15, chapter 517 or Title 17, chapter 91, evictions that are effected without resort to the provisions of this chapter are illegal and against public policy. Illegal evictions include, but are not limited to, the following.
>
>> A.    No landlord may willfully cause, directly or indirectly, the interruption or termination of any utility service being supplied to the tenant including, but not limited to, water, heat, light, electricity, gas, telephone, sewerage, elevator or refrigeration, whether or not the utility service is under the control of the landlord, except for such temporary interruption as may be necessary while actual repairs are in process or during temporary emergencies.
>>
>> B.    No landlord may willfully seize, hold or otherwise directly or indirectly deny a tenant access to and possession of the tenant's rented or leased premises, other than through proper judicial process.
>>
>> C.    No landlord may willfully seize, hold or otherwise directly or indirectly deny a tenant access to and possession of the tenant's property, other than by proper judicial process.

The Court notes that neither Title 15, chapter 517 (asset forfeiture in the criminal context) nor Title 17, chapter 91 (criminal nuisances) applies in the instant case. Thus, this Court will look solely to the provisions of 14 M.R.S.A. § 6014 to determine whether Filipos unlawfully evicted Biggs. There is no

5

allegation that Filipos in any way interrupted utility services to the apartment; accordingly, the § 6014(1)(A) form of illegal eviction did not occur in this case.

There is dispute between the parties regarding whether or not Filipos changed the lock to the apartment, thus illegally evicting Biggs pursuant to § 6014(1)(B). Filipos maintains that he did not change the locks, while Biggs states that he did because her keys did not work in the lock when she returned on September 7, 2006, forcing her to enter the apartment through a window. However, as the Court finds that Filipos unequivocally violated § 6014(1)(C), it does not address any possible § 6014(1)(B) violation.

As an initial matter, the Court concludes, for the reasons explained more fully below, that Biggs did not abandon either her property or the apartment. Therefore, the lease was still in effect and each party was entitled to and obligated under the rights and responsibilities contained in the lease. Thus, Filipos's arguments that Biggs abandoned the apartment such that there was no "leased premises" that he denied her access to and no property that remained belonging to Biggs that he wrongfully seized are without merit.

Section 6014(1)(C) clearly states that it is an illegal eviction for a landlord to "seize, hold or otherwise...deny a tenant access to and possession of the tenant's property, other than by judicial process." As there is no dispute that Filipos disposed of all Biggs's items in the apartment on September 6, 2006 and did so outside of the terms of the lease and the applicable judicial process (described more fully *infra*), Filipos illegally evicted Biggs in violation of § 6014(1)(C). Summary judgment is granted to Biggs on her count for statutory unlawful eviction.

6

Because the Court agrees that Filipos unlawfully evicted Biggs pursuant to 14 M.R.S.A. § 6014, it does not address her common law illegal eviction claim.

**B.      Theft / Conversion**

Although her Complaint styles a claim for theft, in her Motion for Summary Judgment, Biggs corrects herself to assert a claim of conversion. The elements of conversion are: (1) a showing that the person claiming that his property was converted has a property interest in the property; (2) that he had the right to possession at the time of the alleged conversion; and (3) that the party with the right to possession made a demand for its return that was denied by the holder. *Withers v. Hackett*, 1998 ME 164, ¶ 7, 714 A.2d 798, 800. The third element, that a demand be made by the person with the right to possession, is only required in those instances where the holder took the property rightfully. *Id.*

In the instant case, Filipos argues that Biggs fails to meet the first two elements of conversion because she abandoned her property. In Filipos's words, Biggs "clearly indicated through her co-tenant, Crystal Bonner, that she intended to vacate the apartment on or about September 6, and that she would terminate and finalize the lease contract with an inspection of the premises on September 5." Filipos continues, stating that Biggs abandoned the apartment because she "did not want to pay the rent she owed or clean and repair the mess she was responsible for creating."

The Court rejects Filipos's argument for several reasons. First, his reliance on Bonner's alleged representation that Biggs was also moving out early was not reasonable and not in accordance with the law and the terms of the lease. The Court notes that Bonner maintains that she did not tell Filipos that Biggs was

7

moving out early and in fact told him the opposite, namely, that Biggs intended to stay in the apartment until the end of the lease term. However, even assuming that Bonner did state Biggs was moving out early, Filipos was not entitled to rely on this statement because Bonner was not legally authorized to speak for Biggs. It is undisputed that both Biggs and Bonner signed the lease agreement and, therefore, both were equally subject to all of the rights and responsibilities thereunder.[1] Filipos admits that he never spoke to Biggs on the subject of her moving out early.[2]

Nor does Filipos sustain his burden of proving that an agency relationship existed between Bonner and Biggs such that Bonner was authorized to speak for Biggs. *Sweet v. Austin*, 158 Me. 90, 96, 179 A.2d 302, 306 (1962) (quoting *Stevens v. Frost*, 140 Me. 1, 7, 32 A.2d 164, 167 (1943) ("The burden of proof is upon the [party asserting the agency] to prove the agency and the scope thereof. It cannot be presumed"). Moreover, the terms of the lease require that notices to the landlord from the tenants be made in writing. It is undisputed that Biggs never notified Filipos, in writing or otherwise, that she planned to leave the apartment early. Nor was the notice from Bonner to Filipos in writing. Thus, Filipos's argument that Biggs abandoned the property is without merit.

Filipos also failed to act in accordance with Maine law when he disposed of Biggs's property. In two statutes, Maine sets forth the procedure with which

---

[1] Indeed, Filipos asserts his claims for unpaid rent and failure to return the apartment in its original condition against Biggs only, not both Bonner and Biggs.

[2] Filipos makes much of the fact that Biggs never said to him that she intended to continue living in the apartment after September 5, 2006. The Court finds this point irrelevant. Pursuant to the lease, Biggs was entitled to live in the apartment until the end of September 2006. Thus, there was no reason for her to reiterate a right she already had.

8

landlords must comply when dealing with property unclaimed by tenants. For property with a total value under $750.00, 14 M.R.S.A. § 6013 states in relevant part:

> The landlord shall place in storage in a safe, dry, secured location any property with a total value of less than $ 750 that is abandoned or unclaimed by a tenant following the tenant's vacating the rental unit...If the property remains unclaimed after the 14th day after notice has been sent or after the 10th day after the tenant claims the property, the landlord may sell the property for a reasonable fair market price and apply all proceeds to rental arrearages, damages and costs of storage and sale. All remaining balances must then be forwarded to the Treasurer of State.

Property with a value in excess of $750.00 is governed by the Uniform Unclaimed Property Act contained in Title 33, chapter 41 of the Maine Revised Statutes. The Act requires landlords to notify the Treasurer of State, who can accept delivery of the property or authorize the landlord to sell it after he has given notice and after a certain amount of time has passed. 33 M.R.S.A. § 1954(2). The parties disagree as to the value of the property disposed of by Filipos, but it is clear that Filipos failed to comply with either section. Instead of securing the property and providing notice to Biggs, Filipos immediately disposed of all of the items in the apartment on September 6, 2006. As a result of his bringing the property to the recycling center instead of to a secure storage space, Biggs has been unable to recover most of her property that had been in the apartment on that day. Filipos's actions clearly violate both statutes.

Based on the foregoing, Biggs had a property interest in the items discarded by Filipos (because she did not abandon it) and therefore had the right to possess the property at the time of the alleged conversion, thus fulfilling the first two elements to make out a claim for conversion. As Filipos wrongfully took the property under both common law and pursuant to the relevant Maine

9

statutes, Biggs is not required to prove the third element of conversion (i.e., that the party with the right to possession made a demand for its return that was denied by the holder). Accordingly, summary judgment is granted in favor of Biggs on her conversion count.

## II. Filipos's Counterclaims

Filipos asserts two counterclaims against Biggs: breach of contract for failure to pay rent and breach of contract for failure to return the premises in their original condition. The Court will address each in turn.

### A. Failure to Pay Rent

Biggs argues that the security deposit she and Bonner paid when they signed the lease was applied toward the September rent. Filipos disagrees, arguing that he did not give Biggs or Bonner permission to use the security deposit in lieu of paying rent. A motion for summary judgment must be denied if there "are competing versions of the truth" that involve genuine issues of material facts. *Lever*, 2004 ME 35, ¶ 2, 845 A.2d at 1179. And though a court may believe that one party's offered proof is more persuasive, it is the responsibility of a fact-finder, and not a court acting on a motion for summary judgment, to weigh the evidence and render a decision. *Arrow Fastener*, 2007 ME 34, ¶ 16, 917 A.2d at 126. As there is a genuine issue of material fact as to whether or not Filipos told Bonner or Biggs that he would simply apply the security deposit to their September rent obligation, summary judgment is not proper.

### B. Failure to Return the Premises in Their Original Condition

Filipos further claims that Biggs failed to return the apartment to him in its original condition, causing him to expend significant time and money cleaning and repairing the apartment. Biggs was obligated pursuant to the lease

10

to return the premises to their original condition "when the lease ends." For the reasons stated *supra*, Biggs did not prematurely terminate the lease or otherwise abandon the apartment. Thus, she had until the termination of the lease at the end of September 2006 to make any necessary repairs and to clean the apartment. It is undisputed that Filipos undertook these repairs and cleaning himself beginning on September 6, 2006 (and for several days thereafter). Thus, Filipos did not permit Biggs the opportunity to comply with the terms of the lease and instead violated the lease terms himself by entering the apartment in a non-emergency situation without the prior consent of Biggs, the tenant. For all of these reasons, judgment on this counterclaim is for Biggs.

## III. Remaining Issues to Be Determined at Trial

A jury trial in this matter is scheduled to begin on March 10, 2008. Pursuant to this Order, judgment is entered in favor of Biggs on her counts for unlawful eviction and conversion. The only issues remaining to be decided in Biggs's Complaint are the measure of damages for Filipos's unlawful eviction and conversion and the award, if any, of punitive damages.

The Law Court has acknowledged the "vigorous criticism of the doctrine of punitive damages." *Tuttle v. Raymond*, 494 A.2d 1353, 1355 (Me. 1985). While the Law Court has upheld the availability of punitive damages in the State of Maine, it has explicitly stated that there are "cogent reasons for avoiding an overbroad application of the doctrine [of punitive damages]." *Id.* at 1360. Indeed, "notions of fairness and efficiency weigh against allowing exemplary awards where the stated goal of deterring reprehensible conduct would be furthered only marginally or not at all." *Id.* Thus, punitive damages are to be awarded "only upon a limited class of misconduct where deterrence is both

11

paramount and likely to be achieved." *Id.* The Law Court further stated that this class includes tortious conduct "only if the defendant acted with malice." *Id.* at 1361.

Malice can be either express or actual and "exists where the defendant's tortious conduct is motivated by ill will toward the plaintiff" or "where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied." *Id.* at 1361. The Law Court has emphasized that "for the purpose of assessing punitive damages, such 'implied' or 'legal' malice will *not* be established by the defendant's mere reckless disregard of the circumstances. *Id.* (emphasis in original); *Newbury v. Virgin*, 2002 ME 119, ¶ 21, 802 A.2d 413, 418.

Moreover, a plaintiff must meet a heightened standard of proof in order to obtain punitive damages. *Id.* at 1354; *Batchelder v. Realty Resources Hospitality, LLC*, 2007 ME 17, ¶ 22, 914 A.2d 1116, 1124 ("In Maine, however, the common law requires proof of punitive damages claims by the more rigorous clear and convincing standard"). Thus, in order to recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant acted with malice. *Id.* The fact finder must then "weigh 'all relevant aggravating and mitigating factors' presented by the parties, including the egregiousness of the defendant's conduct, the ability of the defendant to pay such an award, and any criminal punishment imposed for the conduct in question." *Id.* at 1359 (quoting *Hanover Ins. Co. v. Hayward*, 464 A.2d 156, 158-59 (Me. 1983)). The trial court can then intervene if it believes that an award of punitive damages is excessive or unwarranted. *Id.* Thus, it is only after she has met her heightened burden of

12

proof and after the jury weighs all relevant facts and after this Court has reviewed the appropriateness of punitive damages in this case that Biggs may recover punitive damages.

Also remaining to be determined at trial is Filipos's counterclaim for breach of contract for failure to pay rent.

Therefore, the entry is:

> Rebecca Biggs's Motion for Summary Judgment is GRANTED as to her counts for conversion and unlawful eviction. Her remaining count for punitive damages is to be resolved at trial.
>
> David Filipos's Motion for Summary Judgment is DENIED as to both of his counterclaims. Judgment is entered for Plaintiff Rebecca Biggs on the failure to return the premises in their original condition counterclaim. The remaining counterclaim for failure to pay rent is to be resolved at trial.
>
> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___7th___ day of ___March___, 2008.

_____
Robert E. Crowley
Justice, Superior Court