GEORGE E. HOWARD II
*vs.*
ROBERT BROWN

Piscataquis.   Opinion, February 15, 1965.

*John L. Easton,* for Plaintiff.

*Arthur C. Hathaway,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

WEBBER, J.   On August 10, 1959 the plaintiff commenced an action against the defendant for an alleged conversion of chattels by writ sounding in trover returnable to the September term of the Superior Court within and for the County of Piscataquis.   On March 23, 1962 the matter was submitted to the determination of the justice below upon an agreed statement of facts.   Decision having been rendered for the defendant, the plaintiff now appeals.

The material facts agreed upon may be restated as follows:  On February 18, 1958 the Piscataquis Contracting Company gave a chattel mortgage to one Gellerson covering

a number of items of personal property including a truck, compressor and roller which are the subject of this trover action. The mortgage was intended to secure an indebtedness of $2971.21 which as of August 1, 1959 had been reduced to $2564.58. This mortgage was recorded in the office of the town clerk of Dover-Foxcroft in Book 14, Page 325, but no notation of the date and time of the recording was made on the records of the clerk. It is agreed, however, that the mortgage was in fact recorded at 11:25 A.M. on February 21, 1958. On that day, February 21, 1958, Gellerson gave an assignment of the mortgage to the plaintiff. This assignment was never recorded. On April 22, 1959 Piscataquis gave a chattel mortgage to the defendant which also covered numerous items including the three chattels here in controversy. This mortgage was given to secure an indebtedness of $1500. The defendant's mortgage was recorded in the same office of the town clerk in Vol. 14, Page 381, but again no record was made of the date and time of recording. A notation was made on the mortgage itself showing a recording date of May 1, 1959. Some time in June, 1959 Piscataquis delivered the three items together with a certain jackhammer to the defendant in payment of the debt owed the defendant. On July 24, 1959 the plaintiff instituted foreclosure of his assigned mortgage by causing notice to be served on the president of Piscataquis. Service was made on July 27, 1959 by a deputy sheriff. On August 1, 1959 the plaintiff instituted replevin action against both Piscataquis and the defendant but the officer was unable to take possession of the chattels in the defendant's possession. At that time or shortly thereafter the plaintiff did obtain possession of those chattels remaining in the hands of Piscataquis. On August 4, 1959 Piscataquis filed a petition in the bankruptcy court. On August 10, 1959 a deputy sheriff made demand upon the defendant for the items here in controversy and upon the defendant's refusal to relinquish them he made service

on the defendant of the writ now before us.  On August 19, 1959 a trustee in bankruptcy was appointed.  Some time in September the trustee ordered both plaintiff and defendant to deliver to him the personal property in their possession which had belonged to the bankrupt company.  After some delay and an initial refusal, both plaintiff and defendant delivered the personal property in their hands to the trustee with the understanding that the proceeds of the sale thereof would be held in escrow until a determination could be made as to the disposition thereof.  In October, 1959 the property was sold at public auction and several thousands of dollars came into the hands of the trustee.  The trustee then challenged the efficacy of the mortgages on the basis of inadequate record and the status of the priority claims of the parties remained in abeyance and under consideration until 1961.  In November, 1961 the referee in bankruptcy conferred with the parties, reviewed the assets on hand and the claims filed.  He gave it as his opinion that the failure in recording placed the plaintiff and the defendant on an equal footing and offered a compromise settlement by which the plaintiff would receive $1,750 and the defendant $1,000, in each case approximately two-thirds of the amount claimed.  He further offered to permit the plaintiff and defendant to file claims for the unpaid balance as common creditors.  It is further agreed that the value of the chattels at the time of the alleged conversion as evidenced by their sale value at public auction was $1,670.  Although the fact was not expressly included in the agreed statement, the justice below in his findings noted that the parties accepted the compromise settlement offered by the referee in bankruptcy and the parties by their brief and argument here concede this to be the fact.

R. S., 1954, Chap. 178, Sec. 2, which, although since repealed, was in force and governed the rights of the parties in 1959 provided in part:

> "The clerk shall record all such mortgages * * *
> in a book or books kept for that purpose, *noting
> therein* and on the mortgage * * * the time when
> it was received, and it shall be considered as re-
> corded when received. * * * . " (Emphasis ours.)

The requirement of noting the time of receipt on the clerk's
record was essential to an effective and valid recording.
*Monaghan* v. *Longfellow* (1889), 81 Me. 298, 17 A. 74; see
*Stafford* v. *Morse* (1902), 97 Me. 222, 227, 54 A. 397, 399.
In *Monaghan* the clerk had the original mortgage in his
possession with the time of reception noted upon it and
the court held that the notice thus afforded was binding on
the subsequent attaching creditor. The opinion made it
clear, however, that the attempted recording itself was in-
complete and null and void. In the instant case, even
though we were to assume that the time of receipt was
noted on the original Gellerson mortgage, there is no sug-
gestion that the clerk had that mortgage in his possession
either at the time the defendant accepted his mortgage or
later when he took delivery of the mortgaged items from
the mortgagor. As between the plaintiff and the defend-
ant, therefore, the plaintiff's mortgage must be viewed as
though never recorded.

This defendant received delivery of the articles here in
controversy from his mortgagor in a non-tortious manner.
The possession of personal property is deemed prima facie
evidence of title and the right to possession. One who
claims adversely has the burden of showing a right to im-
mediate possession superior to that of the one in actual pos-
session. *Stevens* v. *Gordon* (1895), 87 Me. 564, 567; 33 A.
27; *James* v. *Wood* (1889), 82 Me. 173, 177, 19 A. 160, 161;
see *State* v. *Mitchell* (1955), 150 Me. 396, 397, 113 A. (2nd)
618, 619.

With what evidence does the plaintiff seek to overcome
the prima facie title of the defendant? He shows the giv-

ing of a mortgage to one Gellerson, never legally recorded. We are not told whether by the terms of the mortgage the mortgagee was entitled to immediate possession upon default or when, if ever, any default occurred. He shows an assignment of the mortgage, never recorded. He shows an attempted foreclosure by plaintiff in his own name as purported assignee, which foreclosure if it had any legal significance whatever was in any event interrupted by the intervention of bankruptcy proceedings and mutual agreements placing the property in the hands of the trustee. We discover here no evidence of title or the right to immediate possession superior to the right of the defendant who at the time the action was instituted was in actual possession. The required basis for an action of trover is not laid.

The justice below rested his decision for the defendant on the ground that the plaintiff was estopped to proceed with his action by the fact of his agreement with the referee in bankruptcy and the defendant. With this conclusion we concur. That equitable estoppel can defeat recovery for alleged conversion in appropriate circumstances is clear. *Rogers* v. *Street Railway* (1905), 100 Me. 86, 90, 60 A. 713, 714. One may be bound by his conduct and, where there is a duty to speak, by his silence. What were the circumstances here? The referee made a single offer to plaintiff and defendant simultaneously. In substance it was that each should abandon his claim of priority based upon mortgage and should accept the lesser amount proffered by way of compromise. Each was to then proceed by proof of claim as on an unsecured debt. It is inconceivable that the offer did not hinge on the acceptance thereof by both the plaintiff and the defendant. We are satisfied that the referee in bankruptcy could not have intended otherwise, and the plaintiff and defendant must reasonably have so understood. In accepting the offer, therefore, the defendant had a right to assume that the plaintiff by his ac-

ceptance intended to and did thereby waive and abandon all further claim arising by or through his mortgage or assignment. The plaintiff was then in an appropriate tribunal for the determination of his claim of priority as an alleged mortgage creditor and could have insisted on maintaining and asserting that position. In reliance upon this apparent waiver on the part of the plaintiff the defendant made his own election. He changed his position, abandoned his own claim of mortgage priority, accepted a lesser sum than the amount owed him, and assumed the position of an unsecured creditor. Moreover the effect of the agreement was to permit the plaintiff to share in the proceeds from the sale of chattels which the defendant in good faith had claimed. The plaintiff could not thereafter in equity and good conscience be permitted to assert against the defendant a right to immediate possession arising under the very mortgage which he had purported to waive and abandon in order to induce the defendant to change his position. At the very least he had a duty before participating with the defendant in a settlement agreement requiring the consent of both to inform the defendant that he intended and proposed to pursue further his pending action for alleged conversion. We are satisfied that both by conduct and silence the plaintiff was estopped to continue with the action now before us.

*Appeal denied.*