STATE OF MAINE

CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV 01-667

ANN MARIE ROGERS,

Plaintiff

v.

ORDER

JAMES J. MACADAM, HOLLIE S. POPE,
& MACADAM MCCANN P.A.,

Defendants

RECEIVED

APR 0 2 2003

Cumberland, ss, Clerk's Office
STATE OF MAINE
SUPERIOR COURT

DONALD L. GARBRECHT
LAW LIBRARY

APR 9 2003

Before the court is Defendant James J. MacAdam's, Defendant MacAdam McCann, P.A.'s and Defendant Hollie S. Pope's motion for Partial Summary Judgment pursuant to M.R.Civ.P. 56(c).

### FACTS

This section will illustrate some of the more relevant facts leaving out others, the court acknowledging that many material facts are controverted or outweighed by the danger of unfair prejudice. Plaintiff Ann Marie Rogers worked 18 years for a telephone company that later became Verizon New England, Inc. (Verizon). Her job responsibilities included repetitive typing, which over a period of years caused her to suffer pain in her extremities, particularly her arms and hands. The Plaintiff's physician, Dr. John Chance, had taken her out of work on several occasions in 1999 because typing had become too painful. Various work restrictions failed to ease the Plaintiff's physical

1

symptoms. On September 10, 1999, owing to continued physical impairments Dr. Chance took the Plaintiff out of work, which turned out to be the last time she worked at Verizon. As a result, the Plaintiff decided to file a Workers Compensation claim.

In August 1999, the Plaintiff retained the legal services of Defendant James MacAdam, an attorney licensed to practice in the State of Maine, who was a shareholder in the law firm McTeague, Higbee, MacAdam, Case, Cohen and Whitney, P.A. Defendant Hollie S. Pope worked as a paralegal for Defendant MacAdam. In April 2000, Defendant resigned from his law firm and formed another law firm, Defendant MacAdam McCann P.A. Defendant Pope continued to work as a paralegal for Defendant MacAdam. The Plaintiff also continued to be represented by Defendant MacAdam.

On two occasions, Defendant MacAdam failed to file a timely Case Scheduling Memorandum (CSM) with the Maine Workers' Compensation Board, which dismissed the petitions without prejudice. Defendant Pope had misled Defendant MacAdam about the submission and the status of these CSM. After the Plaintiff learned from the Maine Workers' Compensation Board that one of her petitions had been dismissed she contacted Defendant MacAdam McCann P.A. and spoke with Defendant Pope, who told her that her case had not been dismissed. Moreover, on September 22, 2000, Defendant Pope falsely informed the Plaintiff that her Workers' Compensation hearing was cancelled because Verizon had sent a fax, agreeing to pay her benefits.

On October 20, 2000, the Plaintiff received a letter from Verizon, dated three days earlier, which stated that because of her 52-week absence she needed to report back to work on October 23, 2000 or else she would be terminated the

next day. That same day the Plaintiff called Defendant MacAdam's office and spoke with Defendant Pope. The statements of material facts are in dispute as to whether Defendant Pope instructed the Plaintiff to avoid reporting to work. The facts do show that on October 23 Defendant Pope informed the Plaintiff that she had received a consent decree from Verizon purporting to pay the Plaintiff's benefits. Defendant Pope had lied to the Plaintiff, subsequently forging a consent decree. The facts also show that the Plaintiff did not comply with Verizon's request to return to work. On October 24, 2000, Verizon terminated the Plaintiff because she failed to return to work. Defendant Pope delivered to the Plaintiff the forged consent decree. On November 1, 2000, Defendant Pope met with the Plaintiff, presenting her with a check drawn on a Defendant MacAdam McCann P.A. bank account for $20,759.39 for her share of compensation benefits ostensibly from Verizon. Defendant Pope had forged this check. After the fraud came to light, the Plaintiff discharged Defendant MacAdam on September 12, 2001.

On December 6, 2001, the Plaintiff filed suit against the various Defendants based on the following claims: Count I intentional infliction of emotional distress; Count II intentional misrepresentation/fraud; Count III breach of fiduciary duty; Count IV intentional interference with prospective economic advantage; Count V civil conspiracy; Count VI punitive damages; Count VII negligent misrepresentation; Count VIII negligence; Count IX negligent infliction of emotional distress. Consequentially, Defendant MacAdam and Defendant MacAdam McCann filed an Answer along with the following counterclaims: Count I unjust enrichment; Count II conversion.

3

## DISCUSSION

The Law Court recently stated: "A summary judgment is warranted when the statement of material facts and the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, cited in the statement of material facts establish that there is no genuine issue of material fact and that a party is entitled to a judgment as a matter of law." Darling's v. Ford Motor Co., 2003 ME 21, ¶4, ___A.2d___ (citing M.R.Civ.P. 56(c), (h)). A genuine issue is defined as one where a factual dispute is sufficiently supported by evidence requiring the court to choose at trial between the parties' conflicting versions of truth. Am. Protection Ins. Co. v. Acadia Ins. Co., 2003 ME 6, ¶10, ___A.2d___. In addition, a material fact is defined as one that may affect this court's final ruling. Id. When ruling upon the present motion this court will view the evidence in the light most favorable to the Plaintiff, the non-moving party. See id.

## The Causation of the Plaintiff's Loss of Employment.

The Defendants argue that their alleged wrongdoing did not cause the Plaintiff to lose her job with its associated income and benefits because the Plaintiff's physical impairments had made it impossible for her to continue working for Verizon. Under this theory, the actions of the Defendants did not cause the Plaintiff to lose her job. According to the Defendants, because the Plaintiff stated in a Workers Compensation hearing that she could no longer physically work for Verizon, she was collaterally estopped from relitigating the cause of her termination. Cline v. Maine Coast Nordic, 1999 ME 72, ¶9, 728 A.2d

4

686, 688 (recognizing that administrative judgments can collaterally estop the relitigation of factual determinations); Crawford v. Allied Container Corp., 561 A.2d 1027, 1029 (Me. 1989) (stating that an employer who had argued before the Workers' Compensation Commission that a worker was not an employee should not allowed to argue in a subsequent civil suit that the worker was an employee).

Moreover, the Defendants contend that the Plaintiff cannot generate an issue of material fact by changing her own prior sworn testimony. Zip Lube, Inc. v. Coastal Savings Bank, 1998 ME 81, ¶10, 709 A.2d 733, 735. (adopting "the rule that a party will not be permitted to create an issue of material fact in order to defeat a summary judgment motion simply by submitting an affidavit disputing his own prior sworn testimony."). The Defendants point out that the Plaintiff admitted in her application for Social Security benefits that she could not have continued to work at Verizon. Essentially, the Defendants argue that it would be unfair to disregard the Plaintiff's testimony and sworn statement that she could no longer perform her job at Verizon and then in this proceeding allow her to claim that she could have continued to perform her job but for the Defendants' actions.

On first glance, the Defendants' arguments appear to have merit. A review of the statements of material facts does indicate that the Plaintiff could no longer type without accommodations from Verizon. Upon closer inspection, however, it becomes apparent that the Defendants fail to address the immediate cause of the Plaintiff's termination, namely that she failed to report to work on October 24, 2000 as called for in the October 17, 2000 letter from Verizon. The Plaintiff claims during the critical time period between receiving the letter from Verizon and October 24, 2000, she would have reported back to work even if it

was only to find out about the terms of her consent decree. The statements of material facts show that Defendant Pope had told the Plaintiff that Verizon had signed off on a consent decree in which the Plaintiff would be paid without having to return to work. Arguably, the Plaintiff relied upon Defendant Pope's representation and did not return to work on October 24, which resulted in her termination. Whether Verizon would have somehow been able to accommodate her disabilities if she had shown up for work on October 24, 2000 is a disputed issue within the purview of the jury.

## Federal Preemption of the Plaintiff's State Law Claim.

The Defendants argue that Section 301 of the Labor Management Relations Act of 1947 preempts the Plaintiff's state law claims. See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-406 (1988). The Defendants note that the Plaintiff's employment was covered with a collective bargaining agreement (CBA) between her labor union and Verizon, providing specific grievance and arbitration procedures regarding her inability to physically perform her job. Hence, according to the Defendants, the Plaintiff should have filed a grievance with her union when she was terminated, but failed to do so. However, federal jurisdiction applies only in "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a) (2000). Such a relationship does not exist in the present case. In addition, the Plaintiff's state law claims, based in part on her termination for not showing up to work, are not covered by the CBA. Therefore the Plaintiff did not have to exhaust any grievance procedures through the Disability Pay and Arbitration of Medical Determinations section of the CBA. Procise v. Elec. Mut.

6

<u>Liab. Ins. Co.</u>, 494 A.2d 1375, 1380-81 (Me. 1985) (holding that because the CBA did not cover certain claims, the employee did not have to exhaust grievance procedure before resorting to the courts to address those claims).

## Count IV Intentional Interference with Prospective Economic Advantage.

To prevail on her tortuous interference claim, the Plaintiff needs to establish that a prospective economic advantage existed, that the Defendants used fraud or intimidation to interfere with that advantage, and that the interference proximately caused the Plaintiff's damages. <u>Gordan v. Cummings</u>, 2000 ME 68, ¶14, 756 A.2d 942, 946. The Defendants argue that the Plaintiff had no prospective economic advantage because Verizon did not have suitable work for her. In other words, the Plaintiff's claim must fail because she cannot establish the element of causation. As noted above, the statements of material facts show that there is enough evidence to show causation. The Defendants go on to argue that one of the elements of this claim require that the Defendants committed a fraud upon a third party, who in turn would have acted upon this fraud to the detriment of the Plaintiff. <u>Petit v. Key Bank of Maine</u>, 688 A.2d 427, 430 (Me. 1996). Nevertheless, the statements of material facts show that Defendant Pope had spoken with Verizon's attorney on October 23, 2001 without mentioning the purported consent decree or any related negotiations. When the court views this evidence in a light most favorable to the Plaintiff such concealment could have caused Verizon to act detrimentally towards the Plaintiff.

7

**Count V Civil Conspiracy.**

As the Complaint makes clear, the Plaintiff has not plead civil conspiracy as an independent tort, rather as a tort dependent on the first four counts in the Complaint. See Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell, 1998 ME 70, ¶8, 708 A.2d 283, 286 (citing Cohen v. Bowdoin, 288 A.2d 106, 110 (Me. 1972)). Even though the foundation of the Defendants' civil liability may arise in one of the Plaintiff's other claims, there is no reason to dismiss this claim at the summary judgment window. Cohen v. Bowdoin, 288 A.2d 106, 109-110 (Me. 1972).

**Count VI Punitive Damages.**

To recover punitive damages, the burden is on the Plaintiff to prove by clear and convincing evidence that the Defendants acted with express or implied malice. Newbury v. Virgin, 2002 ME 119, ¶21, 802 A.2d 413, 418. In addition punitive damages cannot be awarded in cases where the defendants recklessly disregarded the circumstances of the Plaintiff. Id. Defendant Pope argues that her actions towards the Plaintiff were not motivated by ill will or bad animus and that she ultimately intended to benefit the Plaintiff. The Law Court has stated that "[m]alice also exists 'where deliberate conduct by the defendant, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward a person injured as a result of that conduct can be implied.'" Id. (quoting Tuttle v. Raymond, 494 A.2d 1353, 1361 (Me. 1985)).

Perhaps Defendant Pope's initial actions were mistakes, serious ones, but a review of the statement of material facts shows that her schematic concealment

of her increasingly egregious acts can amply be described as outrageous, implying malice towards the Plaintiff. Similarly, Defendants MacAdam and MacAdam McCann P.A. initially may have been looking out for the best interests of the Plaintiff. However, when the court considers all of the facts generated by the Plaintiff in the most favorable light, including the facts that Defendant MacAdam purportedly kept from the Plaintiff as well as the way he responded to Defendant Pope's mistakes, his behavior as a whole could be considered outrageous to the point of implying malice towards the Plaintiff. Furthermore, the qualifications and denials in the Defendants' Reply Statement of Material Facts concerning the Plaintiff's Statement of Additional Material Facts do not dispel the unprofessional actions attributed to the Defendants.

**Counterclaim, Count I Unjust Enrichment.**

Defendant MacAdam McCann P.A. has filed a counterclaim against the Plaintiff for unjust enrichment, seeking to recover the $20,759.39 in proceeds from the check drawn by Defendant Pope on the firm's account. To succeed on this counterclaim, which is an equitable remedy, Defendant MacAdam McCann P.A. must show that (1) Defendant MacAdam McCann P.A. conferred a benefit on the Plaintiff, (2) the Plaintiff appreciated or knew about the benefit, and (3) it would be inequitable for the Plaintiff to retain the benefit without compensating Defendant MacAdam McCann P.A. See Maine Farmers Exch., Inc. v. Farm Credit of Maine, A.C.A., 2002 ME 18, ¶12 n.6, 789 A.2d 85, 88 n.6. The statement of material facts show that Defendant MacAdam McCann P.A. has satisfied the first two elements of the claim but has failed to establish the third element. This court needs to consider that "[t]he law permits recovery for the value of a benefit

retained when there is no contractual relationship if fairness and justice compel performance of a legal and moral duty to pay." Id. In the present case, the allegedly unjust circumstances thrust upon the Plaintiff makes it impossible for this court to justify the use of its equitable powers in favor of Defendant MacAdam McCann P.A.

**Counterclaim, Count II Conversion.**

Comparable to the above claim for unjust enrichment, Defendant MacAdam McCann P.A. has filed a counterclaim against the Plaintiff for conversion, seeking to recover the $20,759.39 in proceeds from the check drawn by Defendant Pope on the firm's account. To succeed on this counterclaim Defendant MacAdam McCann P.A. must show (1) that it has a property interest in the $20,759.39 proceeds; (2) that it had the right to possess these proceeds at the time of the conversion; and (3) that it demanded the return of these proceeds from the Plaintiff who failed to comply. Withers v. Hackett, 1998 ME 164, ¶7, 714 A.2d 798, 800. The Law Court, however, has recognized "[t]hat equitable estoppel can defeat recovery for alleged conversion in appropriate circumstances." Howard v. Brown, 161 Me. 52, 57, 206 A.2d 854, 856 (1965) (citing Rogers v. Portland and Brunswick Street Railway, 100 Me. 86, 90, 60 A. 713, 714 (1905)). In the present case, the Plaintiff/Counterclaim Defendant has plead the affirmative defense of estoppel. The statement of material facts show that fraud has been committed upon the Plaintiff/Counterclaim Defendant and therefore granting summary judgment on this counterclaim would not further justice.

10

WHERFORE, owing to the discussion above interpreting the parties' statements of material facts, this court shall **DENY** all of the Defendants' Motions for Summary Judgment.


Dated: April 2, 2003

Roland A. Cole
Justice, Superior Court

PETER RUBIN ESQ
PO BOX 9729
PORTLAND ME 04104

JAMES BOWIE ESQ
PO BOX 4630
PORTLAND ME 04112

THIMI MINA ESQ
12 CITY CENTERY
PORTLAND ME 04101