2004 ME 74

Arthur REARDON

v.

LOVELY DEVELOPMENT, INC.

Supreme Judicial Court of Maine.

Submitted On Briefs: Dec. 12, 2003.

Decided: June 3, 2004.

Joel A. Dearborn Sr., Esq., Brewer, for plaintiff.

James E. Fortin, Esq., Sheilah R. McLaughlin, Esq., Douglas, Denham, Buccina & Ernst, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

[¶ 1] Lovely Development, Inc. appeals from a judgment entered on a jury verdict in the Superior Court (Penobscot County,

*Mead, J.*) in favor of Arthur Reardon. Lovely Development asserts, *inter alia,* that the evidence does not support the damages award. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] In December 1998, Arthur Reardon leased commercial real property located at 543 Broadway in Bangor from Lovely Development to be used by him in the operation of a fast-food restaurant to be known as the Taco Shack. Reardon made renovations to the premises with funds borrowed from Lovely Financial Group, doing business as Small Change Finance, a sister company to Lovely Development. As collateral for the loan, Reardon granted Lovely Financial a security interest in certain equipment used by him in the operation of the Taco Shack.

[¶ 3] Reardon eventually defaulted in his lease obligations. When he was unable to cure the default in late September 1999, Greg Lovely, on behalf of Lovely Development, changed the locks on the premises, in effect evicting Reardon without resorting to any legal proceedings. Greg Lovely refused to allow Reardon to remove the equipment from the leased premises until the amount due Lovely Financial was paid in full, which occurred ten months later, in July 2000.

[¶ 4] Subsequently, Reardon sued Lovely Development, alleging (1) illegal eviction; (2) conversion; (3) fraud; and (4) tortious interference with a business relationship. Lovely Development counterclaimed for money owed as unpaid rent. The trial court granted a summary judgment in favor of Lovely Development on its counterclaim for unpaid rent. A jury trial was held on the remaining claims.

After hearing the evidence, the trial court dismissed the fraud and tortious interference claims. The jury, however, returned a verdict for Reardon on the illegal eviction claim finding damages of $22,000, and on the conversion claim finding damages of $50,000. The trial court denied Lovely Development's post-jury verdict motions for a judgment as a matter of law and for a new trial. This appeal followed.

## II. DAMAGES FOR ILLEGAL EVICTION

■ [¶ 5] The remedy for illegal eviction is the greater of actual damages or $250.[1] 14 M.R.S.A. § 6014(2)(A) (2003). The parties concede that the jury's damage award for illegal eviction mirrors Reardon's claim that he spent $22,000 remodeling the property to make it suitable for his restaurant business, and the evidentiary record amply supports the fact that Reardon spent approximately $22,000 on renovating the leased premises.

■ [¶ 6] Section 6014 declares evictions effected without resort to the provisions of Chapter 709 of Title 14 to be illegal and against public policy. 14 M.R.S.A. § 6014(1) (2003). Once an illegal eviction is established, a court may award $250 or actual damages. 14 M.R.S.A. § 6014(2) (2003). This statutorily created cause of action is distinct from the common law cause of action for wrongful eviction, a breach of contract action, which arises when a landlord breaches the terms of a lease. The question, then, is whether costs incurred by Reardon in renovating the leased premises may properly be the basis for a jury's determination of his actual damages resulting from the illegal eviction.

---

1. A tenant is also entitled to recover costs and attorney fees incurred "in connection with the prosecution or defense of such action." 14 M.R.S.A. § 6014(2)(B) (2003).

■ [¶ 7] Although section 6014 does not define "actual damages," the term can fairly be read to be an amount that will compensate a tenant for his loss sustained as a result of a landlord's violation of the eviction statute.[2]

■ [¶ 8] Expenses incurred by Reardon in renovating the premises were not a proper basis to support the jury award of damages on the illegal eviction claim. Accordingly, renovation expenditures incurred by Reardon are not evidence of the actual damages sustained as a result of an illegal eviction. To recover more than $250 for the illegal eviction, Reardon had the burden of establishing his actual damages. Lost profits, lost goods, such as food, and the benefits of lost services, such as advertising, are examples of losses that may constitute actual damages. The costs for renovations, which, according to the lease, remain with the premises, are not recoverable as actual damages, although the loss of the benefit of the renovations may be recoverable. In order to be recoverable, damages must not be uncertain or speculative, but must be grounded on facts and evidence. *See King v. King,* 507 A.2d 1057, 1059 (Me.1986). Although damages need not be proved to a mathematical certainty, some evidence of the amount of the loss sustained must support an award. *Id.* at 1060. Here the parties agree that the damages of $22,000 were based on the costs of improvement, a measure of damage not allowable on this claim. It must, therefore, be set aside.

## III. DAMAGES FOR CONVERSION

■ [¶ 9] Tort damages, with the exception of punitive damages, are intended to make the plaintiff whole by compensating him or her for any injuries or losses proximately caused by the defendant.

*Snow v. Villacci,* 2000 ME 127, ¶ 9, 754 A.2d 360, 363. The plaintiff has the burden of proving his or her damages. *See King,* 507 A.2d at 1060. Reardon's equipment was taken from him in December 1999 and returned to him in July 2000. Reardon, therefore, is at best entitled to recover damages he sustained by virtue of his loss of use of the property for a period of approximately eight months. The equipment was eventually returned. Reardon, therefore, is entitled to be compensated for his loss of use, not the value of the equipment. The jury awarded damages of $50,000. We examine "the jury's verdict to 'determine if any reasonable view of the evidence and those inferences that are justifiably drawn from that evidence supports the jury verdict.'" *Me. Energy Recovery Co. v. United Steel Structures, Inc.,* 1999 ME 31, ¶ 6, 724 A.2d 1248, 1250 (quoting *Townsend v. Chute Chem. Co.,* 1997 ME 46, ¶ 8, 691 A.2d 199, 202).

■ [¶ 10] Reardon points to two different evidentiary bases to support the damages award for lost profits. First, he points to an agreement by Lovely Development to credit Reardon for lost profits for an eight-day period, estimated by Reardon at $100 per day, which resulted from Reardon's inability to open for business due to a broken sewer line on the premises. Calculating lost profits for the ten-month period, based on profits of $100 per day, yields approximately $30,000. The issue, then, is whether this evidence is "credible evidence" sufficient to support a damages award for lost profits. *Newbury v. Virgin,* 2002 ME 119, ¶ 20, 802 A.2d 413, 417.

[¶ 11] In *Eckenrode v. Heritage Mgmt. Corp.,* 480 A.2d 759 (Me.1984), we held that:

---

**2.** 14 M.R.S.A. § 6014 (2003).

Plaintiff's own opinion as to the increased profits he would have reaped had he operated the shop for the entire period of his contract, based *merely on one year's past performance* of the shop and on changes that would result under the contract as to plaintiff's expenses and profit retention, was not an informed opinion based on relevant facts in evidence upon which the jury could rely in assessing damages for claimed lost profits.

*Id.* at 766 (emphasis added). Similarly, in *Newbury,* the plaintiff's opinion testimony, without "corroborating evidence establishing that ... profits would be sustainable," was "insufficient to justify the ... reasonableness of the amount of the award." *Newbury,* 2002 ME 119, ¶ 20, 802 A.2d at 417–18.

[¶ 12] The Taco Shack had been open for business for only "a few days" before the broken sewer line forced Reardon to close down. Thus, his opinion that his lost profits were $100 per day was based on only "a few days" of operation—a period of operation far less than the one year of past performance we held insufficient in *Eckenrode.*

 [¶ 13] As a second basis to support the damages award, Reardon points to the testimony of Cindy Patterson, who prepared a profit and loss statement for the Taco Shack. This evidence does not corroborate an estimated daily profit of $100. She testified that the statement she prepared showed a profit of $2382 for the year 1999, based on nine months of operation. Calculating lost profits for the ten-month period, based on profits of $2382 for nine months of operation, yields approximately $2647. This amount further breaks down to an estimated daily profit of nine or ten dollars. Aside from this discrepancy, there is additional reason to question whether a jury could reasonably rely on this evidence to support a finding of *any* amount of lost profits. For instance, Ms. Patterson testified that (1) she prepared the 1999 profit and loss statement specifically for use in the lawsuit; (2) the statement does not reflect outstanding debt, including at least $6000 in past due rent; and (3) she also prepared a 1999 tax return for Reardon, which showed a loss for the Taco Shack of $13,483.

[¶ 14] The evidence cited by Reardon is not the "credible evidence" needed to support an award of lost profits.

[¶ 15] The other issues raised do not merit comment.

The entry is:

Judgment vacated. Remanded for a new trial on damages only.