2011 ME 23

**Douglas J. DEGENHARDT**

v.

**EWE LIMITED PARTNERSHIP.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 1, 2010.

Decided: Feb. 24, 2011.

Lawrence E. Merrill, Esq., Bangor, Maine, for EWE Limited Partnership.

Judson Esty–Kendall, Esq., Pine Tree Legal Assistance, Inc., Bangor, Maine, for Douglas Degenhardt.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

**JABAR, J.**

[¶ 1] When ejecting a guest from a "lodging house," the owner of the property need not comply with the forcible entry and detainer process set forth in 14 M.R.S. §§ 6001–6016 (2010). *See* 30–A M.R.S. §§ 3837–3838 (2010).[1] Invoking this principle, EWE Limited Partnership asks us to conclude that its property qualifies as a "lodging house" within the meaning of sections 3837 and 3838. The District Court (Bangor, *Gunther, J.*) rejected this argument and found that EWE illegally evicted Douglas J. Degenhardt from the property in violation of 14 M.R.S. § 6014, causing him $590 in actual damages. Although we discern no error in the court's factual findings and affirm its conclusion that EWE's property does not meet the statutory definition of "lodging house," we vacate a portion of the court's damages award.

## I. BACKGROUND

[¶ 2] The court (*R. Murray, J.*) found the following facts, which are supported by competent evidence in the record. EWE is the owner of a fifteen-unit building on Union Street in Bangor. On January 13, 2009, Degenhardt began living at the Union Street building, at which time he signed a "Guest Registry" assigning him to unit 8. Degenhardt also signed a second document entitled "Rules For Union Street Inn" (the Rules), which described the Union Street property as "a licensed boarding house with the City of Bangor." Located directly above the signature line of the document was the following language: "I realize that I am a short term guest and am subject to normal hotel law. I understand that the length of my stay may be limited by management d[ue] to Maine law." During Degenhardt's entire stay at the Union Street building, the property was licensed by the City of Bangor as a "lodging house." *See* 30–A M.R.S. § 3811(1) (2010).

[¶ 3] According to the Rules, all rooms in the Union Street building were "available on a daily basis for $40 per night, due in advance unless other arrangements [we]re made with the management."[2] In reality, however, the vast majority of the building's residents, including Degenhardt, paid rent on a monthly basis. Degenhardt's rental fee for unit 8 was $450 per month, which included heat and electricity. Although cleaning and linen services were available, all of the building's residents declined these services in exchange for a reduced room rate. Unit 8 was furnished with a foldout couch and sink, but was not equipped with bathroom or kitchen facilities. Instead, Degenhardt shared a common bathroom and kitchen area with other residents. These common areas were cleaned and maintained by RLE Property Management, which managed the Union Street property for EWE.

---

1. The requirements for ejecting a guest from a "lodging house" are contained in 30–A M.R.S. § 3837 (2010), which states:

   The owner or manager of an inn, hotel, restaurant, [or] lodging house ... may request that any person on the premises of that establishment who is causing unnecessary disturbance to other persons on the premises ... leave the premises immediately. If any person who is requested to leave the premises under this section fails or refuses to do so, the owner or manager may use a reasonable degree of force against that person to remove that person from the premises.

   Similarly, 30–A M.R.S. § 3838(5)(A) (2010) provides that "[a]n innkeeper or campground owner may ... eject from the hotel, lodging house or campground premises ... [a]ny person who ... [d]isturbs, threatens or endangers other guests."

2. Room rates were posted at various locations around the building, but they were not posted in the units themselves.

[¶ 4] In May 2009, Degenhardt moved to unit 9 in the Union Street building. No signed documentation accompanied this change. Unit 9 had its own bathroom and kitchen facilities, and was furnished with a dresser and the foldout couch from unit 8. Degenhardt was charged $550 per month to rent unit 9.

[¶ 5] On September 9, 2009, Degenhardt was arrested for disorderly conduct and spent the night in jail. Upon returning to the Union Street property the following day, Degenhardt was told that he was no longer welcome. After a brief exchange, an RLE employee called the police to escort Degenhardt from the premises. Although Degenhardt attempted to gather his possessions before leaving the property, he was ultimately unable to recover all of his personal belongings.

[¶ 6] On September 14, 2009, Degenhardt filed a complaint in the District Court seeking injunctive relief and damages for illegal eviction. Shortly thereafter, the court issued a temporary restraining order against EWE, enabling Degenhardt to remain living in unit 9. Following a hearing, the court granted Degenhardt's motion for a preliminary injunction.[3] In its ruling, the court rejected EWE's contention that the Union Street property qualified as a "lodging house," and it found that Degenhardt was entitled to the protections of the forcible entry and detainer process. The court (Gun-

ther, J.) later entered judgment for Degenhardt on his claim of illegal eviction, awarding him reasonable attorney fees and $590 in damages. In its calculation of damages, the court awarded Degenhardt $350 for lost property and $240 "for being deprived of housing for four days and nights." Following the judgment, EWE brought this appeal.

## II. DISCUSSION

### A. Lodging House

[¶ 7] EWE's challenge to the court's illegal eviction finding rests on its contention that it operated the Union Street building as a "lodging house." Because the owner of a lodging house may eject a guest without resorting to the forcible entry and detainer process, see 30–A M.R.S. §§ 3837–3838, EWE contends that its removal of Degenhardt did not constitute an illegal eviction.[4] "We review the trial court's factual findings for clear error, and its application of the applicable law to those facts de novo." Estate of Miller, 2008 ME 176, ¶ 9, 960 A.2d 1140, 1142. Interpretation of a statute is reviewed de novo. Hatch v. Anderson, 2010 ME 94, ¶ 11, 4 A.3d 904, 907.

[¶ 8] Title 30–A M.R.S. § 3801(3) (2010) provides the following definition of "lodging house":

---

**3.** During the hearing, Degenhardt rested his case before presenting evidence that he had actually been evicted from the premises. Over EWE's objection, which it renews on appeal, the court allowed Degenhardt to present additional evidence on this issue. We conclude that the court acted well within its discretion in allowing Degenhardt to reopen his case. See Dalphonse v. St. Laurent & Son, Inc., 2007 ME 53, ¶ 16, 922 A.2d 1200, 1205 ("A court should permit the presentation of additional evidence if doing so will prevent an unfair result."); In re Danielle S., 2004 ME

19, ¶ 2, 844 A.2d 1148, 1149 ("The trial court has discretion in determining whether a party may reopen its case after the close of the evidence.").

**4.** EWE alternatively argues that it did not act "willfully" in violating 14 M.R.S. § 6014 (2010) because an employee of RLE initiated Degenhardt's eviction. This contention is not convincing and we reject it without further discussion.

**3. Lodging house.** "Lodging house" means a house where lodgings are rented, but does not include:

A. A house where lodgings are rented to fewer than 5 lodgers;

(1) The term "lodger" does not include persons within the 2nd degree of kindred to the person operating the lodging house;

B. The dormitories of charitable, educational or philanthropic institutions; or

C. The emergency use of private dwelling houses at the time of conventions or similar public gatherings.

Although this definition is of limited use in discerning the nature of the Union Street property, other statutory provisions offer some assistance. Lodging houses may be subject to municipal licensing and regulatory requirements, *see* 30–A M.R.S. §§ 3811–3812 (2010),[5] must post maximum daily room rates in every bedroom, *see* 30–A M.R.S. § 3802(1) (2010), and must maintain a guest register on the premises at all times, *see* 30–A M.R.S. §§ 3821–3822 (2010).

[¶ 9] Our case law also provides guidance in distinguishing between a lodging house and regular rental property. We have found the length of an occupant's stay to be of particular importance, with extended occupancy suggesting an arrangement unlike that of a lodging house. *See Hailu v. Simonds*, 2001 ME 155, ¶ 9, 784 A.2d 1, 4; *cf. Benham v. Morton & Furbish Agency*, 2007 ME 83, ¶ 19, 929 A.2d 471, 475. Also relevant to the inquiry is the language used in any agreement between the parties, as well as the availability of on-site kitchen facilities. *See Hailu*, 2001 ME 155, ¶ 9, 784 A.2d at 4. Finally, we have mentioned the following "factors that distinguish a lease from a license in a lodging context":

whether the owner retained keys; had free access to the room; had a right to enter for repairs; lived in the building; posted a doorman or desk clerk; provided meals, utilities, cleaning services, towels, linens, utensils, and furnishings; or held the premises out to the public as a place for travelers or lodgers.

*Benham*, 2007 ME 83, ¶¶ 17–18, 929 A.2d at 475.[6]

■ [¶ 10] Although the property here retains qualities of both a lodging house and regular rental property, we agree with the District Court that the arrangement between the parties more closely resembles the latter. According to the undisputed testimony, the building has no doorman or desk clerk, and management did not retain keys to the individual units. The rooms themselves were minimally furnished, and only certain units contained kitchen or bathroom facilities. Although EWE was granted a municipal license to operate the property as a "lodging house," it achieved only partial compliance with the other statutory requirements: room rates were posted, but not in the units themselves; a guest register was maintained, but it contained no record of De-

---

5. Though relevant, a municipality's issuance of a license is not determinative of the property's status as a "lodging house" pursuant to state law. *See Hailu v. Simonds*, 2001 ME 155, ¶ 9 n. 2, 784 A.2d 1, 4.

6. In *Benham v. Morton & Furbish Agency*, we analyzed whether a rental agreement created a lease or a license for purposes of determining the existence of a duty of care. 2007 ME 83, ¶ 15, 929 A.2d 471, 474. Although the statutory definition of "lodging house" was not at issue, we consider the factors set forth in *Benham* to be relevant in distinguishing between a lodging house and rental property subject to the forcible entry and detainer process. *See* 2 Richard R. Powell, *Powell on Real Property* § 16.02[3][b][ii], at 16–23 to 16–24 (Michael Allan Wolf ed., 2005).

genhardt's move to unit 9. We also note the apparent discrepancy between the Union Street property's Rules and EWE's actual operating procedure: cleaning and linen services were offered, but no resident ever utilized them; the posted room rates indicated a daily fee, but the vast majority of residents were charged on a monthly basis. Indeed, although the Rules emphasized that occupants were "short term guest[s]," Degenhardt lived at the Union Street building continually for eight months prior to his eviction. Other guests had been living at the property for years, including one guest for over twenty-five years. Based on these facts, we cannot say that the court erred in concluding that the Union Street property was not a lodging house within the meaning of 30–A M.R.S. §§ 3837 and 3838.

**B. Damages**

[¶ 11] Once an illegal eviction is established, "[t]he tenant is entitled to recover actual damages or $250, whichever is greater." 14 M.R.S. § 6014(2)(A). In challenging the court's $590 damages award, EWE argues that (A) the $350 figure ascribed to lost property lacked an evidentiary basis, and (B) the $240 awarded to Degenhardt "for being deprived of housing" does not constitute an element of actual damages. "We review a trial court's damages calculation to see whether there is competent evidence in the record to support the award." *Treadwell v. J.D. Constr. Co.*, 2007 ME 150, ¶ 25, 938 A.2d 794, 800.[7]

[¶ 12] Although not statutorily defined, we have interpreted the term "actual damages" to mean "an amount that will compensate a tenant for his loss sustained as a result of a landlord's violation of the eviction statute." *Reardon v. Lovely Dev., Inc.*, 2004 ME 74, ¶ 7, 852 A.2d 66, 69. "Lost profits, lost goods, such as food, and the benefits of lost services, such as advertising, are examples of losses that may constitute actual damages." *Id.* ¶ 8, 852 A.2d at 69. Damages need not be established with mathematical certainty, but an award must be supported by some evidence of the amount of the loss sustained. *Id.* (citing *King v. King*, 507 A.2d 1057, 1060 (Me.1986)).

[¶ 13] With these principles in mind, we have little difficulty concluding that the court's $350 award for lost property is supported by competent evidence. Although the court found Degenhardt's testimony regarding the value of his property not to be credible, the court was entitled to make its own "judgmental approximation" of the value of the property Degenhardt described. *See Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶ 15, 834 A.2d 947, 952 ("A damages award based on a judgmental approximation is proper where the evidence establishes facts from which the amount of damages may be determined to a probability.").

[¶ 14] We cannot, however, say the same for the $240 in damages awarded to compensate Degenhardt "for being deprived of housing for four days and nights." Although money spent on housing following an illegal eviction may be considered a component of actual damages, *see King*, 507 A.2d at 1059–60, Degenhardt testified that his eviction from the Union Street property caused him to spend one night sleeping in a park, after which he paid $50 to stay with friends. For the four

---

7. Because EWE is challenging the court's findings without having filed a motion pursuant to M.R. Civ. P. 52, we assume that the court made any necessary subsidiary findings that are supported by competent evidence in the record. *See Fitzpatrick v. Fitzpatrick*, 2006 ME 140, ¶ 17, 910 A.2d 396, 401.

days and nights Degenhardt was unable to return to unit 9, the prorated portion of his $550 monthly rental fee was approximately $73.33. Although the court was entitled to include these amounts—a total of $123.33—in its damages calculation, we are unable to find support in the record for the remainder of the $240 award. This unsupported portion of the damages award must therefore be vacated.

The entry is:

Judgment vacated in part. Remanded to the District Court with instructions to reduce the damages award to $473.33. In all other respects, the judgment is affirmed.