ENTERED AUG 2 9 2014
MC /

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-392

JAW-CUM-08-2014

PAULA R. SALVAGGIO d/b/a,
JAAAMM'S ASSOCIATES,
    Plaintiff

v.

JCS 2, LLC,
    Defendant

ORDER ON MOTION FOR
SUMMARY JUDGMENT

STATE OF MAINE
Cumberland ss. Clerk's Office

AUG 20 2014

RECEIVED

This matter is before the Court on Defendant's motion for summary judgment on all counts of the complaint. Defendant filed the motion on September 11, 2013. After the court conducted on July 16, 2013 a Rule 26(g) discovery conference and ordered plaintiff to produce all financial information requested in discovery, Plaintiff filed on August 30, 2013 a motion to dismiss without prejudice. That motion was based on Michael Salvaggio Jr.'s (Michael Jr.) unavailability to sort out the business records in order to produce then to defendant. On October 25, 2013, the court denied plaintiff's motion but gave plaintiff until November 22, 2013 to respond to the motion for summary judgment. Plaintiff filed an opposition to defendant's motion for summary judgment on November 22, 2013. Defendant filed its reply and the motion was argued before the court on January 2, 2014.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not controverted, unless the court indicates otherwise. Many of defendant's statements of material fact were deemed admitted because plaintiff failed to properly qualify or deny the statement.

The genesis of this action was the foreclosure of real property located at 29 School Street in Gorham, Maine (29 School Street) that was formerly owned by Bedford Falls Associates, LLC. (SMF ¶ 1.) Bedford Falls Associates, LLC, (Bedford Falls) is now a dissolved LLC with Michael Salvaggio (Michael Sr.) as the prior owner.[1] (SMF ¶ 2.) The plaintiff Paula Salvaggio (Paula) is Michael's wife. (SMF ¶ 3.) Michael Jr. is their son.

Paula Salvaggio is the sole member of JAAAMM'S Associates, LLC. (JAAAMM'S) (SMF ¶ 4.) JAAAMM'S was a property management company set up by Paula and Michael Salvaggio without the assistance of a lawyer about August 5, 2009. (SMF ¶ 5.) JAAAMM'S was set up to run multiple businesses out of the 29 School Street, a former church, including a short-lived church performing arts center, the Bella Chiesa Banquet Center, and a Sons of Italy Lodge. (SMF ¶ 6.) All of these businesses were established in order to have functions, weddings, and anything else where people needed space. (SMF ¶ 7.) Paula initially capitalized JAAAMM'S with her own personal funds. (SMF ¶ 8.) Paula was the only person with authority to sign checks on behalf of JAAAMM'S bank, Town and Country Federal Credit Union. (SMF ¶ 9.)

The church performing arts center, Bella Chiesa Banquet Center, and Sons of Italy Lodge were run and managed by Michael Jr. with the assistance of Michael Sr. (SMF ¶ 10.) Michael Jr. had no ownership interest in JAAAMM's, could not sign checks, is not a member, and had no personal money at stake in the business. (SMF ¶ 11.)

---

[1] *See Jim's Plumbing & Heating, Inc. v. Home Loan Investment Bank & Michael Salvaggio*, 2012 ME 124, 55 A. 3d 419 and the Superior Court decision *Jim's Plumbing*

2

About March 3, 2011, Paula on behalf of JAAAMM'S signed a lease to rent a portion of the premises at 29 School Street from Bedford Falls for a term of ten years and with a base rent payment of $1,500 per month. (SMF ¶ 12.) The business location listed for JAAAMM'S was the home of Paula and Michael Salvaggio in Falmouth, Maine. (SMF ¶ 13.)

On May 24, 2012, 29 School Street was sold at a foreclosure auction sale. (SMF ¶ 14.) Jonathan Smith (Smith), the managing partner of JCS 2, LLC (JCS2) was the successful bidder at the auction. (SMF ¶ 15.) JCS 2 was set up to hold and manage 29 School Street. (SMF ¶ 16.)

On the day of the auction, Michael Sr. called Smith to ask "what about my brides" and other scheduled events. The day after the foreclosure sale, Smith met with Michael and Michael Jr. to discuss among other things that an event center was being run out of the recently purchased 29 School Street. (SMF ¶ 17.) At no point during the meeting between Smith, Michael, and Michael Jr. did Smith state that Michael and Michael Jr. would need to vacate the premises. (SMF ¶ 18.)[2]

JCS 2 closed on the purchase of 29 School Street on July 9, 2012. (SMF ¶ 19.) On July 11, 2012, Attorney John Sawyer of the law firm Sawyer, Sawyer & Minot, P.A., as attorney for JCS 2, wrote a "notice to immediately quit and surrender" 29 School Street premises to JAAAMM's. (SMF ¶ 20.) Attorney Sawyer did not follow the mandates of Maine's forcible entry and detainer statute. (*Id.*) Within a couple of days after the time of the notice to quit and surrender the premises was delivered to JAAAMM's, it was also given a new set of keys to the building because the locks were

---

[2] Although plaintiff qualifies her response to SMF ¶ 18, she does not controvert the statement of material fact so it is deemed admitted.

changed following the foreclosure sale closing. (SMF ¶ 21.) Arrangements were made to allow the tenants of the former foreclosed upon entity to continue to have access to the property. JCS 2 consented to the continued occupation by its tenants despite the provision of the notice to quit and surrender the premises. (SMF ¶ 22.)

Following the notice to quit and surrender, Michael Sr. contacted Smith to discuss an upcoming birthday party that was booked at JAAAMM's leased premises at 29 School Street. (SMF ¶ 23.) Smith stated to Michael that the booked event could be held and Smith was willing to work out any difficulties. (SMF ¶ 24.) At the same time, Michael discussed the events that were to take place or were planned for 29 School Street.[3]

JAAAMM's and the Salvaggios were given the opportunity to lease the space at 29 School Street that they were occupying before the foreclosure sale. (SMF ¶ 26.) Smith met with Michael Sr. on July 24, 2012, and at this meeting, Michael, on behalf of JAAAMM's told Smith that although he was very interested in entering a new lease, he would not be able to lease the premises due to the fact that he could not afford the rent. (SMF ¶ 27.)[4] At this meeting, Michael also gave to Smith a list of property he intended to take out of the leased premises or sell to JCS 2. (SMF ¶ 28.) On the next day, July 25, 2012, Smith had the locks changed because there were items on the list Smith did not think Michael or JAAAMM's were entitled to take. (SMF ¶ 29.) JCS 2 and Smith made the premises available to JAAAMM's and the Salvaggios after changing the locks provided they went through Smith to retrieve their items, but it took months for the

_____

[3] Although plaintiff qualifies or denies SMF ¶ 25, she does not properly deny it because her response does not directly controvert the statement and as such SMF ¶ 25 is deemed admitted. Notwithstanding this, the court has treated the information contained in plaintiff's response true for the purposes of the motion for summary judgment.
[4] Plaintiff's qualification does not controvert this statement of material fact; therefore, the statement is deemed admitted.

4

JAAAMM's or the Salvaggios to remove the items.[5] (SMF ¶ 30.) The parties disagree about why it took so long to remove plaintiff's property; however, this dispute does not involve a material fact.

Eventually, JAAAMM's or Paula removed the vast majority of the contents of 29 School Street by November 2012. (SMF ¶ 31; OSMF ¶ 31.) Paula believes that only five items that she owns remain in the premises that she did not remove. (SMF ¶ 32.) Paula lists the following as not recovered from 29 School Street and for which she claims a continued ownership interest: (1) exterior board sign; (2) brass/glass dividers on balcony; (3) filters in exhaust hood; (4) bars on balcony in main ballroom; and (5) chandeliers and wall sconces in the main ballroom, balcony, hallways and downstairs function room. (*Id.*) Paula originally listed two additional items that were left behind, but now agrees that those items were the subject of an agreement/trade between her or JAAAMM's and JCS 2. (SMF ¶ 32.) JCS 2 disagrees that Paula or JAAAMM's has any personal property remaining at 29 School Street because the identified remaining five items are fixtures attached or affixed to 29 School Street, and as such belong to the owner of the premises. (SMF ¶ 33.) It is a legal question whether these items are fixtures.

Plaintiff filed a four-Count Complaint against Defendant on September 19, 2012, alleging tortious interference with prospective economic advantage (Count I); conversion (Count II); unjust enrichment (Count III); and illegal eviction under 14 M.R.S. § 6001 et. seq. (Count IV). Plaintiff also seeks punitive damages and attorney's fees in the Complaint.

---

[5] Smith states that the delay was not caused by JCS 2's actions or access limitations. (SMF ¶ 30.) Plaintiff's qualification of this statement is not an accurate reflection of Smith's deposition testimony cited by plaintiff; therefore, the statement contained in SMF ¶ 30 is deemed admitted.

5

Notwithstanding the allegations in the Complaint, Paula, the sole member of JAAAMM's, states that she was not operating the day-to-day business operations of the business and therefore does not have any first hand knowledge of the details of the finances of the business other than she knows that in 2011 it lost $30,303.00. (SMF ¶ 36.) Although Paula provided contracts for events scheduled, Paula cannot provide any information about gross revenue or actual damages JAAAMM's claims to have lost as a direct result of the eviction. (SMF ¶ 38.)[6] Paula does not know whether the delay in retrieving her items from JCS 2's premises was caused by JCS 2. (SMF ¶ 41.) Paula does not know what clients JAAAMM's was unable to service due to the alleged length of time access to 29 School Street was denied to her. (SMF ¶ 42.)[7] Neither JCS 2 nor any of its representatives could have fraudulently misrepresented to her that she could continue to operate JAAAMM's banquet center at 29 School Street. (SMF ¶ 44.) Plaintiff does not properly controvert the statement contained in SMF ¶ 44. Moreover, Plaintiff previously replied to SMF ¶¶ 26, 27 that JAAAMM's was unwilling to pay the rent Smith wanted for the space.

Although Paula and JAAAMM's are seeking loss of business that they claim they could have had if they were not evicted, they cannot say what the dollar amount is for loss of business, and they have no expert witness to establish that business was lost. (SMF ¶ 46.) Paula cannot say if the loss of business was related to the eviction or a poor business model for JAAAMM's. (PSM ¶ 47.) Neither Paula, Michael, Michael Jr., nor anyone on behalf of JAAAMM's ever communicated to Smith or JCS 2 that they had

---

[6] Paula points to contracts she produced but these documents do not contradict the statement contained in SMF ¶ 38.

[7] Although her son may know the answers to some of these questions, without more, this does not controvert SMF ¶ 38,

booked events that they were going to miss out on, where JCS 2 did not make appropriate accommodations. (SMF ¶ 49.) Plaintiff states only that at the May 25, 2012 meeting with Smith that Michael Sr. expressed his concern about the "brides" who had booked weddings or receptions at the center. (OSMF ¶ 49.) Plaintiff fails to provide any admissible evidence of deposits or monies returned for events they could not hold because of an alleged eviction. The only evidence is that they would not enter a lease on Smith's terms.

On September 8, 2012, JCS 2 leased 29 School Street while allegedly some of JAAAMM's personal property was still on the premises. (SMF ¶ 34.) Paula has no admissible evidence about others using or being allowed to use JAAAMM's furniture and appliances. (SMF ¶ 45.)

## DISCUSSION

### 1. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.,* 2001 ME 77, ¶ 4, 770 A.2d 653. "A genuine issue of material fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkel v. Livingston,* 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.,* 2004 ME 35, ¶ 2, 845 A.2d 1178). "A moving party's factual assertions may not be deemed admitted because of an improper response unless those factual assertions are properly supported." *Cach, LLC v. Kulas,* 2011 ME 70, ¶ 9, 21 A.3d 1015.

7

In response to a motion for summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for judgment as a matter of law. *Northeast Coating Technologies, Inc. v. Vacuum Metallurgical Co., LTD*, 684 A. 2d 1322, 1324 (Me. 1996)(citation omitted). The party opposing summary judgment may not rest upon bare allegations, but instead must come forward with competent and admissible evidence to support each element of his claims. *First Citizen Bank v. M.R. Doody, Inc.*, 669 A. 2d 743, 744 (Me. 1995). Plaintiff bears the burden of presenting a prima facie case. *Quirion v. Geroux*, 2008 ME 41, ¶ 9, 942 A. 2d 670.

2. Wrongful Eviction

For purposes of this motion, JCS 2 concedes that the eviction of plaintiff was not done in accordance with Maine's forcible entry and detainer statute. Section 6014 of Title 14 M.R.S. provides that the court, after a finding of an illegal eviction, shall find one or both of the following:

(A) The tenant is entitled to recover actual damages or $250, whichever is greater.

(B) The tenant is entitled to recover the aggregate amount of costs and expenses determined by the Court to have been reasonably incurred on tenant's behalf in connection with the prosecution or defense of such action, together with a reasonable amount of attorney's fees.

14 M.R.S. § 6014.

Maine Courts have determined that "actual damages" can be fairly read to be an amount that will compensate a tenant for her loss sustained as a direct result of a landlord's violation of the eviction statute. *Reardon v. Lovely Development, Inc.*, 2004 ME 74, ¶ 7, 852 A. 2d 66, 69; *Degenhardt v. EWE, Ltd.*, 2011 ME 23, ¶ 12, 13 A. 3d 790.

8

Actual damages can include loss of profits, lost goods, and other similar losses that could constitute actual damages. *Id.*

Plaintiff has failed to articulate, let alone prove, that she suffered any actual damages resulting from JCS 2's alleged wrongful eviction. Plaintiff's answer to Defendant's Interrogatory 9 that "Loss of business, specifically the existing pending contracts; loss of property due to inability to enter the contract" fails to demonstrate that she suffered any actual damages. Plaintiff's supplemental answer to Interrogatory 9 fails to provide any detailed information supporting her claim for actual damages. The Plaintiff supplemented her answer to Interrogatory 9 as follows:

> Plaintiff was unable to retrieve her property and equipment in order to try to mitigate the loss of the School Street property as a venue for the events. Plaintiff had contacted other venues with the plan to reestablish the banquet business in a new location, however without access to the equipment and supplies, she was unable to move forward with those plans. Due to the prolonged amount of time access to the School Street property was denied, Plaintiff was unable to commit to the clients who had contracted to have their events hosted.

(SMF ¶ 40.) Plaintiff's response simply fails to describe the amount of damage she is actually claiming in this matter.

Paula's deposition testimony on July 15, 2013 does not add to her previous attempt to describe her actual damages. Although she claimed to be the sole member of JAAAMM's and the sole "owner" of the bank account JAAAMM's had at Town & Country Federal Credit Union, as well as the only person who could sign checks for JAAAMM's, Paula could not state a dollar figure for the amount and extent of actual damages. She failed to even identify those clients mentioned in her supplemental answer to Interrogatory 9 that she was unable to service as a result of the eviction.

9

Paula also failed to identify an expert on the issue of actual damages and she has offered no evidence that Michael or Michael Jr. is qualified to assemble a lost profits projection of a business. Although she produced at her deposition two alleged profit and loss statement for 2011 and 2012, she admitted she did not draft those documents, never knew where the supporting documentation was, if it existed at all, to verify both income and expenses listed for each year, and she has been unable to identify any documentation of past contracts for events that were held at 29 School Street that might evidence an income stream. The one page 2011 profit and loss statement lists a total net profit of negative $30,303.00 but there is no supporting documentation for this figure or how the business arrived at this figure. The 2012 profit and loss statement, again not drafted by Paula but rather by her husband and son, is a one-page document that lists profit for the entire year totaling $4,035.27. She has produced no evidence to support the profit listed on the 2012 profit and loss statement, including $23,400 from food sales and $43,400 on liquor sales. Plaintiff has also not produced any evidence to support her claimed expenses or attorney's fees. She does not even know whether the attorney's fees are solely related to the eviction. (SMF ¶ 50.)

The Law Court has consistently held that "[p]rospective profits are allowable only if they can be estimated with reasonable certainty." *Rutlend v. Mullen*, 2002 ME 98, ¶ 22, 798 . 2d 1104, 1112 (quotation marks and citation omitted). An opinion regarding lost profits " must be an informed opinion based on facts that the fact-finder can evaluate." *Id*. Without testimony that provides a basis for the projections of lost profits or how the projections were derived, evidence on lost profits is not admissible. Even if the plaintiff were allowed by the court to designate an expert at this late date, after discovery has

10

closed, the expert would not be able to formulate an opinion because there is no underlying data upon which the lost profits projection could be based.

After Paula Salvaggio's deposition testimony, this court ordered the plaintiff to produce all documentation from Town & Country Federal Credit Union that would support her claimed income and expenses, her personal and business tax returns and any documents that would support her claim to actual damages. The produced records disclose internal transactions from other Town & Country bank accounts but do not contain the requisite detailed explanation. (SMF ¶ 48.) Paula produced documentation regarding planned renovations to start the event center, however those expenses are not an appropriate basis for damages on an illegal eviction claim. *Reardon*, 2004 ME at ¶ 8, 852 A. 2d at 69. According to the Court in Reardon, "the costs for renovations . . . are not recoverable as actual damages . . . ." *Id.*

In any claim for damages, caused by wrongful eviction or otherwise, the "damages must not be uncertain or speculative, but must be grounded on facts and evidence." *Id.* (citation omitted). To survive summary judgment, plaintiff must produce "some evidence of the amount of the loss sustained." *Id.* Plaintiff has failed to do this. Accordingly, at most she is entitled to $250 for illegal eviction pursuant to 14 M.R.S.A. § 6014(A).

3. Conversion

The necessary elements to make out a claim for conversions include,

(1) a showing that the person claiming that his property was converted has a property interest in the property; (2) that he had the right to possession at the time of the alleged conversion; and (3) that the party with the right possession made a demand for its return that was denied by the holder.

11

*Withers v. Hackett*, 1998 ME 164, 714 A. 2d 798, 800 (citation omitted). "The gist of conversion is the invasion of a party's possession or right to possession at the time of the alleged conversion." *Id.*

There is no evidence that Paula Salvaggio was denied access to the premises to recover her list of alleged business and personal property for 29 School Street. Even though the locks were changed on May 25, 2012, the Defendant gave Paula a key to the new locks to enter and exit the premises as she pleased. Even after the locks were changed a second time, JCS 2 was willing to allow Plaintiff into 29 School Street at any time and for as long as she needed to remove her property to which she claimed entitlement. Although there was a delay in retrieving Paula's property, there is no evidence that the delay in time had anything to do with JCS 2 denying access to Plaintiff. She offers no evidence of a time in which she sought access but was denied access by Smith or JCS 2.

With regard to the five items that Plaintiff claims are hers that remain at 29 School Street, those items are fixtures; therefore, Plaintiff did not have the requisite property interest. A chattel is merged in the realty if "(1) it is physically annexed, at least by juxtaposition, to the realty or some appurtenance thereof; (2) it is adapted to and usable with that part of the realty to which it is annexed; and (3) it was so annexed with the intention, on the part of the person making the annexation, to make it a permanent accession to the realty." *Cumberland Cnty. Power & Light Co. v. Hotel Ambassador*, 134 Me. 153, 183 A. 2d 132, 134 (1936). "[T]he controlling intention is not the initial intention at the time of procuring the article in question, nor the secret intention with

12

which it is affixed, but the intention which the law deduces from all the circumstances of the annexation." *Id.*

All five of the claimed items are physically fastened to the premises. *See Roderick v. Sanborn*, 106 Me. 159, 76 A. 263, 264 (1909)("Although the being fastened or fixed to a freehold is the leading principle in many of the cases in regard to fixtures, it has not been the only one. Window, doors, and window shutters are often hung, not fastened, to a building; yet they are properly part of the real estate, and pass with it, because it is not the mere fixing or fastening which is regarded, but the use, nature, and intention.") Plaintiff admitted that all five items were attached to or affixed to the premises. (SMF ¶ 33.) Removal of all these items would cause damage to the premises, and tenant chattels cannot be removed without damages are fixtures. *In re Triple A Sugar Corp.*, 13 B.R. 969, 973 (Bankr. D. Me. 1981)(citations omitted)("The inevitability of injury to the freehold upon removal of the thing attached has been considered a clear indication of an intention permanently to annex.")

Plaintiff's failure to present evidence that she incurred any actual and articulable damages by way of lost profit or loss of use in the personal property and inability to characterize the personal property as anything but fixtures entitles JCS 2 to summary judgment on the conversion claim alleged in Count II of the Complaint.

4. Tortious Interference with Prospective Economic Advantage

In order to recover damages for tortious interference with prospective economic advantage, Plaintiff must prove:

> (1) that a valid contract or prospective economic advantage existed; (2) that the Defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages.

13

*Rutland v. Mullen*, 2002 ME 1998, ¶ 13, 798 A. 2d 1104, 1110 (citation omitted). Plaintiff has not produced any evidence that would allow a fact finder to find any of the requisite elements of tortious interference. Plaintiff did not have a contract with JCS 2 and there is also no evidence of a prospective economic advantage. There is also no evidence that JCS 2 engaged in fraudulent or intimidation-based activity. Paula Salvaggio testified at her deposition that there is no way that JCS 2 could have engaged in fraudulent behavior. Moreover, Plaintiff has not pled fraud with any of the specificity required for fraud. Finally, the claim for damages to tortious interference, is plagued with the same infirmities and fatal flaws as her claims for conversion and actual damages related to the wrongful eviction. She has not produced any evidence that would prove she suffered actual and articulable damage.

5. Unjust Enrichment

Plaintiff claims unjust enrichment in Count III of her complaint. "Unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Aladdin Elec. Associates v. Town of Old Orchard Beach*, 645 A. 2d 1142, 1145 (Me. 1994)(citation omitted). "In an unjust enrichment case the court must decide what constitutes the inequitable retention of a benefit by the defendant." *Id.*

There is no evidence that JCS 2 used or knowingly allowed others to use Plaintiff's alleged furniture, dinnerware, appliances or any other items for JCS 2's benefit without compensation to Plaintiff. There is no evidence at all that whatever property remained in the premises in which the Plaintiff claimed an ownership interest

14

were used by anyone at any time after the locks for 29 School Street were changed the second time in late July 2012. Paula Salvaggio testified at her deposition that any information she had regarding this allegation was based solely on hearsay, which is not admissible under M.R. Evid. 801 or 802, and which does not oppose a motion for summary judgment. All five of the items that remained on the property were affixed and attached to the premises and, as a result, were fixtures to which she cannot claim an ownership interest. Even if she could prove that these five items were not fixtures or appurtenances to the real estate, she has not presented any evidence that JCS 2 used the remaining property for it own benefit or allowed others to use these items.

6. Punitive Damages

Plaintiff seeks punitive damages in Count I in connection with the alleged tortious interference with prospective economic advantage. Punitive damages are only awarded where compensatory damages are awarded. *See Zemero Corp. v. Hall*, 2003 ME 111, ¶ 11, 831 A. 2d 413. For an award of punitive damages, "a court must find, by clear and convincing evidence that malice existed." *Morgan v. Kooistra*, 2008 ME 26, ¶ 29, 941 A. 2d 447 (internal quotation and citation omitted). Plaintiff must prove that "a party acted with ill will toward the Plaintiff or that the conduct was so outrageous that malice can be implied; it is not established by a mere reckless disregard of the circumstances." *Id.* Summary judgment may be granted dismissing claims for punitive damages where the evidence does not raise a material factual issue for trial on the issue of malice or outrageousness. *Gayer v. Bath Iron Works Corp.*, 687 A. 2d 617, 622 (Me. 1996). There is no evidence from which a reasonable fact finder could conclude that JCS 2's representations rise to the level of actionable outrageousness or express or

15

implied malice. *See St. Francis de Sales Fed. Credit Union v. Sun Ins. Co.*, 2002 ME 127, ¶ 17, 818 A. 2d 995 (insurer's recklessness in drafting and issuing certificates overstating coverage insufficient to support punitive damages); *Tuttle v. Raymond*, 494 A. 2d 1353, 1361 (Me. 1985)(reckless operation of an automobile, by excessively exceeding the speed limit in a 25 mph zone, striking another vehicle and splitting it in two was not sufficient to support finding of malice and an award of punitive damages).

## CONCLUSION

The entry is:

Defendant's motion for summary judgment on counts I, II, III and IV of the complaint are GRANTED.

Date:   August 20, 2014

Joyce A. Wheeler
Justice, Superior Court

**Plaintiff-Elliott Teel Esq**
**Defendant-John Veilleux Esq**

16